GILBERT CHAMBERS, PROSECUTOR-APPELLANT, v. CIVIL
SERVICE COMMISSION OF NEW JERSEY, FRANK J.
PIETRUCHA AND LOUIS R. FREUND, JUDGE OF THE
SECOND DISTRICT COURT OF NEWARK, DEFENDANTS-
RESPONDENTS.

Submitted May 29, 1942—Decided October 15, 1942.

For the appellant, *Charles E. McCraith, Jr.*

For the Civil Service Commission, *David T. Wilentz,*
Attorney-General, and *Harry A. Walsh,* Assistant Attorney-
General.

The opinion of the court was delivered by

HEHER, J.  On December 8th, 1936, the Judge of the
Second District Court of the City of Newark appointed one
Voltaggio "acting assistant clerk" of the court, at an annual
salary of $2,500, to fill a vacancy created by the promotion
of the incumbent to the clerkship of the court; and on the
same day he designated the respondent Pietrucha as an "addi-
tional Clerk, to assist the Clerk in the division of small

claims" of the court, at an annual salary of $1,200, pursuant to the authority conferred by section 16 of chapter 225 of the laws of 1926. *Pamph. L., pp.* 371, 375; *R. S.* 1937, 2:8-58. On June 14th, 1937, the Civil Service Commission held a competitive examination for the latter position, and thereafter certified the name of Pietrucha as one of those eligible for the permanent appointment. He was given the appointment on October 4th, 1937, at the same salary. The appointment and salary were approved by the Civil Service Commission and the governing body of the City of Newark. A competitive examination for the first-named assistant clerkship was scheduled for March 15th, 1937, but was "postponed" indefinitely for reasons not given. It was not held until November 1st, 1940. Appellant was first on the register of eligibles, classified as a veteran of the World War with a record of disability incurred in the line of duty; Voltaggio was No. 20, and Pietrucha No. 41. The eligible list was announced on May 21st, 1941; and, on the following day, the Judge of the court advised the Civil Service Commission of his "intention" to "promote" Pietrucha from his position as "Clerk of the Small Claims Division" of the court and "Assistant to" the clerk "to the position of Assistant Clerk," temporarily held by Voltaggio, at an annual salary of $2,000. On May 29th ensuing, the Commission "approved" the promotion "without further examination" on the ground that Pietrucha was "the only male employee in the Second District Court eligible for promotion."

*Section* 11:4-2 of the Revised Statutes of 1937 directs that "Appointments to and promotions in the civil service of the state shall be made only according to merit and fitness, to be ascertained, as far as practicable, by examinations, competitive, if practicable;" and *section* 11:10-7 provides that "A vacancy in the higher classes of positions shall be filled, as far as it is consistent with the best interests of the state, by promotion following competitive tests open to those who have served a minimum time established by regulation in the lower class or classes of positions as may be designated."

The determination of the Civil Service Commission to hold an open competitive test for the position in question consti-

tuted a finding that, in the particular circumstances, the promotion of the occupant of the single position in the next lower rank would not serve the public interest, and the subsequent counter-action was therefore in disregard of the policy of the statute. Although Voltaggio held the assistant clerkship for four years under his provisional appointment, in contravention of *R. S.* 11:10-3, the promotion of Pietrucha was not deemed to be in the public interest until the day after the result of the competitive examination became known, and then only because Voltaggio was not eligible for the appointment. The District Court Judge acknowledged that he would have bestowed the appointment upon Voltaggio if it had been within his power, and that, since it was not, he conceived it to be his province "to resort to the list * * * or to that section of the act which recognizes the advantage of promotion of an experienced person from one bracket to another." Thus the judge made experience in the work the conclusive test, even though acquired while the superior position remained unfilled through failure of compliance with *section* 11:10-3, *supra;* and in this he usurped a function lodged by the act in the Civil Service Commission. And it does not matter that the Commission acquiesced in the course so taken. Such a procedure invites and facilitates the use of artifice to frustrate the essential policy of the statute, and is therefore inadmissible. Thereby the door to evasion and fraud would be opened. The legislative concept was that once it is determined by the Commission that the filling of a vacancy by a promotion would not be consistent with the best interests of the public, and a competitive test is held and the result ascertained and proclaimed, the register of eligibles may not then be disregarded in favor of a promotion from the next lower grade. This would seem to be indispensable to the integrity of the system.

The Attorney-General urges that Pietrucha's "eligibility for appointment on a promotional basis became fixed before the examination was held," and that the failure of the appointing authority and the Civil Service Commission to "recognize his right prior to the holding of the examination should not at a later date operate to deprive him of that

right." But this argument does not take into account that it is the province of the latter tribunal, under *section* 11:10-7, *supra,* to determine whether the filling of a vacancy by a promotion will serve the "best intersts of the state," and that here that question was resolved in the negative.

And we do not consider the case of *Albert* v. *Caldwell,* 127 *N. J. L.* 203, as controlling. There, the Civil Service Commission held an open competitive test for the filling of vacancies in the rank of patrolman in a local police department, on the hypothesis that chancemen were not the holders of "positions in a lower grade," rather than that it was not practicable to fill the vacancies by promotions from among persons holding positions in a lower grade as directed by *R. S.* 1937, 11:22-34, governing the operation of the civil service system in municipalities. The Supreme Court ruled that the assumption was without validity, and that the action thus taken was an irregular exercise of the Commission's statutory function, but that laches barred relief. This court held that "no legal wrong was done to the chancemen by examining others with them or indeed until the ordinance" (requiring that patrolmen be selected from the list of chancemen) "was violated by the actual appointment of an outside candidate not a chanceman, where there were chancemen eligibles who had passed the examination;" that "the period of laches" did not begin "to run until the appointment was actually made," and, in the particular circumstances, the delay was not sufficient to work an estoppel. The rationale of the holding seems to be that the chancemen were entitled to a promotional competitive examination, and that the test taken should stand as such even though outsiders had been permitted to participate. Here, the Civil Service Commission necessarily found, in the exercise of the authority conferred by *section* 11:10-7, *supra,* that the public welfare required that there be an open competitive examination for the position in question—a conclusive finding in the circumstances.

The judgment is accordingly reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, DONGES, HEHER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ.   12.