212 N.J. Super. 114 (1986)
514 A.2d 69
DENNIS O'MALLEY, APPELLANT,
v.
DEPARTMENT OF ENERGY AND DEPARTMENT OF CIVIL SERVICE, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 8, 1986.
Decided August 20, 1986.
*117 Before Judges FRITZ, GAYNOR and BAIME.
Lamb, Chappell, Hartung, Gallipoli & Coughlin, attorneys for appellant (Robert F. Varady on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondents (James J. Ciancia, Assistant Attorney General, of counsel; Lewis A. Scheindlin, Deputy Attorney General, on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
Once again we are called upon to consider the failure of the Department of Civil Service to comply with the limitation contained in N.J.S.A. 11:10-3 on the length of time for which a provisional employee may be employed, the effect of such inaction on those who accept provisional appointment with the legitimate expectation of qualifying for permanent status and *118 the appropriate corrective measure to be pursued. See Handabaka v. Division of Consumer Affairs, 167 N.J. Super. 12 (App.Div. 1979); Omrod v. New Jersey Dept. of Civ. Serv., 151 N.J. Super. 54 (App.Div. 1977).[1]
On November 8, 1975 appellant began employment with the New Jersey Department of Energy as a senior engineer, utilities. This was a provisional appointment pending an examination which was held about a year later. After taking the examination, appellant was certified as eligible for permanent status and in August 1978 began a probationary period of employment which became permanent in December 1978. In February 1981, he was given a provisional appointment to the position of supervising energy specialist and was advised by letter from the chief personnel officer of the Department of Energy "that permanent appointments will be made in accordance with Civil Service rules when the resulting list from the examination is published." No notice pertaining to such an examination was received by appellant until January 1985 when it was announced that the examination was canceled. During his performance as supervising energy specialist, appellant received satisfactory certifications from his superior including recommendations in 1982 and 1984 for salary increases. On December 17, 1984 appellant received official notification from the chief personnel officer that he was being returned to his former permanent title of senior engineer, utility with a corresponding annual salary reduction of approximately $6,000. Upon receipt of this notice, appellant filed a grievance and an appeal with the Department of Civil Service, Division of Appellate Practices and Labor Relations. The response from the Department was that as "Mr. O'Malley did not have permanent status in the title of Supervising Energy Specialist ... he does *119 not have an entitlement to a hearing before the Civil Service Commission." This appeal followed.[2]
Appellant now seeks reinstatement to his previous provisional status pending an examination for that position, with a retroactive salary adjustment from the date of his demotion. He contends that, under the circumstances, the Department of Energy is equitably estopped from demoting him because of the failure of the Department of Civil Service to have scheduled an examination for the position of supervising energy specialist during the years that he provisionally occupied this position, as contemplated by N.J.S.A. 11:10-3 and as indicated by the Department's representative at the time of his provisional appointment.
In challenging his demotion, appellant relies upon the view we expressed in Omrod that the extended failure to conduct a competitive examination may estop the removal of a provisional appointee to a classified position who occupied the position satisfactorily for a lengthy period of time. See 151 N.J. Super. at 58-60. He also finds support in our observation in Handabaka that
the four month limitation on the life of a provisional employee is the law. Government itself should be particularly assiduous in its observance. Moreover, where its violation works an injustice on a particular applicant for permanent appointment ... prompt corrective measures should be taken. [167 N.J. Super. at 15.]
Respondents dismiss the suggestion in Omrod as dicta and point out that in two unreported decisions we have declined to follow the estoppel theory espoused in Omrod.[3] Furthermore, it is asserted the elements of representation and detrimental reliance are not present thereby rendering the equitable estoppel doctrine inapplicable. Additionally, respondents contend *120 that, as a provisional appointee, appellant was unprotected by the Civil Service Act and thus was subject to being terminated at any time without cause and without a hearing. N.J.A.C. 4:1-16.8(b). In this respect, they liken his status to that of an at-will employee. See English v. College of Medicine and Dentistry of N.J., 73 N.J. 20, 23 (1977).
The underlying purpose of the Civil Service Act is to secure efficient public service in all of the various departments of state, county and municipal government. Walsh v. New Jersey Dept. of Civ. Serv., 32 N.J. Super. 39, 43 (App.Div. 1954). As a means for accomplishing this objective, positions in the classified service are insulated against considerations of politics, personal favoritism or partisanship in any form by requiring that appointments and promotions be made according to merit and fitness to be ascertained by competitive examinations. N.J.S.A. Const. Art. 7, § 1, par. 2; N.J.S.A. 11:4-2. Employment lists for various positions in the classified service are established as a result of these examinations, N.J.S.A. 11:9-1, with appointments required to be made from those lists. N.J.S.A. 11:10-5. Pending the establishment of a reemployment or employment list, a vacant position may be filled by a provisional appointment "to prevent the stoppage of public business or inconvenience to the public," N.J.S.A. 11:10-3, but such appointment shall "in no case [continue] for a period exceeding a total of four months." Ibid.
The employment of provisional appointees for extended periods of time not only violates the express terms of the controlling statute but also contravenes the objective of civil service that appointments be based upon merit and fitness as determined by competitive examinations. Clearly, the limitations engrafted upon provisional appointments evince an intent that they be utilized only as stop-gap measures so that the public business might not be interrupted pending the establishing of employment lists. The failure to establish such lists thereby permitting positions to be provisionally occupied for *121 extended periods thwarts this legislative intent and tends to subvert the salutary aims of the civil service system. This would seem to be reason enough to require that a provisional appointee who has served satisfactorily for an extended period of time be afforded the opportunity of attaining permanent status before being dislodged from the provisional position.
The Department of Civil Service offers no explanation for the noncompliance with the four-month limitation on provisional appointments other than to suggest that it is often impossible, as a practical matter, to administer an examination and develop an employment list within four months. While this may be so, it does not vindicate a failure to take such steps over an extended period of time, nor justify a continued disregard of an express legislative directive. In any event this argument should be made to the Legislature and not to us. We repeat our admonishment in Handabaka that "Government itself should be particularly assiduous in its observance" of the law. 167 N.J. Super. at 15.
Furthermore, the failure to establish employment lists within the prescribed period undermines the legitimate expectation of a provisional employee, who has satisfactorily served in the position, of having the opportunity to attain permanent status with its attendant rights and benefits. Elemental fairness dictates that civil service employees may assume that the laws and regulations pertaining to their employment in provisional or permanent positions will be followed by the Department. Moreover, the indefinite postponement of qualifying examinations unjustly subjects employees who have served provisionally for extended periods to dismissals without cause and the inability to contest any such arbitrary action. See N.J.A.C. 4:1-16.8. The Department's argument that, by accepting the provisional appointment, appellant voluntarily agreed to these conditions overlooks his right to rely upon the establishment of an eligibility list for the position within the limited period inferentially prescribed by statute. This factor alone *122 distinguishes a provisional employee from an at-will employee. To the at-will employee nothing is promised except a job for which he or she will get compensated until he or she is discharged. The provisional employee is promised by N.J.S.A. 11:10-3 that a reemployment or employment list will be established and by N.J.S.A. 11-10-2 that a test will be given for the purpose of establishing it. This distinction makes it perfectly apparent that the underlying interests involved call for compliance by the Department with the directives governing the operation of the civil service system. See Woolley v. Hoffman-LaRoche, Inc., 99 N.J. 284, 290-292 (1985). We perceive no valid reason for differentiating in this regard between the private and public sectors. See Nicoletta v. North Jersey Dist. Water Supply Comm'n, 77 N.J. 145 (1978).
Additionally, we are in accord with the observation in Omrod that the doctrine of equitable estoppel should be applied to preclude the dislodging of an employee from a position provisionally occupied for a lengthy period of time, at least to the extent of preventing such action until the employee is given the opportunity of qualifying for permanent status in the job. In our view, fair dealing requires that a long-time provisional employee be granted this consideration. The doctrine of equitable estoppel, which is founded on the fundamental principles of justice and good conscience, Goodpasture v. Goodpasture, 115 N.J. Super. 189, 196-197 (Ch.Div. 1971), precludes the repudiation of a position assumed where that course would work injustice to one who has relied thereon. See West Jersey Title & Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 153 (1958). In our view, the interests of justice and common fairness warrant the application of the doctrine against the respondents. See Gruber v. Raritan Tp., 39 N.J. 1, 13 (1962). Moreover, its application in this case would not hinder or prejudice essential government functions. See Vogt v. Belmar, 14 N.J. 195, 205 (1954).
The failure to conduct a qualifying examination for the position provisionally occupied by appellant was contrary to the *123 statutory directive and the representation by the Department of Energy that a permanent appointment would be made in accordance with Civil Service rules. Appellant was entitled to rely upon these affirmations for attaining permanent status in the higher position and their repudiation by respondents subjected him to the continued uncertainty of demotion at any time without cause or a hearing. We perceive this to be a sufficient detriment for invoking the estoppel doctrine, at least in this case.
Estoppel against a public body is not favored. See Skulski v. Nolan, 68 N.J. 179, 181, 198 (1975). We do not apply it here without considerable soul-searching. We trust it is evident that our determination in this respect is related to the circumstances of this particular case, just as the question of estoppel almost always must depend on the circumstances of a particular case. Having said that, we note that the application of estoppel against defendants in this matter will unquestionably assist in assuring that they do comply with the law. We expect that the Department of Civil Service will comply with our direction that it schedule an examination fairly promptly now, as it should have then.
We would also hope that a further purpose to be served by this application of the doctrine, would be to alert those who must abide by N.J.S.A. 11:10-3 that estoppel is no longer simply a matter of dictum. Its potential in a given case might be sufficient motivation for alacrity in compliance with the law.
These considerations compel us to conclude that, in the circumstances of this case, appellant may not be dislodged from his provisional appointment without being afforded the opportunity to qualify as a permanent appointee in the position. This remedy does not conflict with the rule that "[t]he mere passage of time during which a temporary appointee serves in office, and the failure of the Civil Service Commission to hold an examination or take other action against such an appointee, cannot convert a temporary status into a permanent one." *124 Capibianco v. Civ. Serv. Comm'n, 60 N.J. Super. 307, 319 (App.Div. 1960). Accordingly, we direct the Department of Energy to reinstate appellant provisionally to the position of supervising energy specialist pending the establishment of an employment list by the Department of Civil Service and we further direct the Department of Civil Service to proceed to conduct the necessary qualifying examination for the establishment of such list.
We find no bad faith or maliciousness on respondents' part in removing appellant from the position provisionally occupied or in denying him a hearing which would justify any retroactive salary adjustment. See Nicoletta v. North Jersey Dist. Water Supply Comm'n, 77 N.J. at 166-167.
The matter is remanded to the Department of Energy and the Department of Civil Service for further proceedings consistent with this opinion.
NOTES
[1] The issue has also been involved in other unreported decisions of this court.
[2] Although the appeal is from a final decision of the Department of Civil Service, we presume the Department of Energy was joined because of the relief sought by appellant.
[3] See R. 1:36-3. Reliance upon interpretations of unreported opinions, which do not constitute precedents, in the face of countervailing implications clearly manifest in published opinions, hardly serves as justification.