DENNIS O'MALLEY, RESPONDENT, v. DEPARTMENT OF ENER-
GY AND DEPARTMENT OF CIVIL SERVICE, APPELLANTS.

Argued February 18, 1987—Decided November 2, 1987.

*Lewis A. Scheindlin,* Deputy Attorney General, argued the cause for appellants (*W. Cary Edwards,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*Robert F. Varady* argued the cause for respondent (*Lamb, Hartung, Gallipoli & Coughlin,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The issue on this appeal is whether the former Department of Energy (the Department) may be equitably estopped from returning respondent, Dennis O'Malley, from his provisional appointment as supervising energy specialist to his permanent position as senior engineer when a promotional examination was not given between the date of his provisional appointment and the date of the demotion. The former Department of Civil Service (Civil Service), which has been replaced by the Department of Personnel, *N.J.S.A.* 11A:11–2, ruled that O'Malley was not entitled to a hearing on the demotion. The Appellate Division reversed and remanded the matter to Civil Service and the Department, which has since been merged into the Departments of Commerce and Economic Development, the Department of Community Affairs, and the Department of Environmental Protection. *N.J.S.A.* 52:27F–1. In reversing, the Appellate Division stated that O'Malley "may not be dislodged from his provisional appointment without being afforded the opportunity to qualify as a permanent appointee in the position." 212 *N.J.Super.* 114, 123 (1986). We granted certification, 107 *N.J.*

34 (1986), and now reverse the judgment of the Appellate Division.

## I

In November 1975, O'Malley was hired by the Department as a provisional employee with the title of senior engineer. Three years later, after taking a Civil Service examination, he received a permanent appointment to that position. In 1979, O'Malley was provisionally appointed as administrator, Office of Alternative Engineering Techniques and Waste Recovery, and in 1981, he accepted another provisional appointment, this time as a supervising energy specialist. No competitive examination was given for either position. O'Malley asserts that during 1981 he applied to take Civil Service examinations to qualify for a permanent appointment as an energy specialist. In June 1981, Civil Service advised him that a permanent supervisory appointment as supervising energy specialist would be made "in accordance with civil service rules when the resulting list from the examination [was published]." He unsuccessfully applied to Civil Service to take examinations for other positions, and in 1984, he was notified that he was being returned to his former position as senior engineer with a salary reduction of approximately $6,000 per year. No one has replaced him as a supervising energy specialist in the Department.

Although O'Malley claims his demotion was in response to a grievance he filed when he was denied leave for National Guard duty, the Appellate Division found no evidence of malice on the part of Civil Service in removing him from his provisional appointment. Our review of the record leads us to the same conclusion.

After receiving notification of his removal, O'Malley appealed to Civil Service, which ruled that because he had not been permanently appointed as a supervising energy specialist, he was not entitled to a hearing before the commission. O'Malley

appealed to the Appellate Division asserting not that Civil Service improperly denied him a hearing, but that the Department should be estopped from returning him to his former position.

In its decision, the Appellate Division focused on the section of the Civil Service statute that provides for provisional appointments:

Pending the establishment of a re-employment or employment list, the chief examiner and secretary, with the approval of the commission, may, if necessary to prevent the stoppage of public business or inconvenience to the public, but not otherwise, authorize the filling of the vacant position mentioned in section 11:10–1 of this title at once, by provisional appointment. Such appointment shall continue only pending the establishment of a re-employment or employment list and in no case for a period exceeding a total of four months. No person shall receive more than one provisional appointment or serve more than four months as a provisional appointee in any fiscal year.

No person not possessing the minimum required qualifications for any position, as determined by the preliminary test or inquiry prior to beginning work as the chief examiner and secretary may prescribe, shall receive provisional appointment. [*N.J.S.A.* 11:10–3.]

The court found that the failure of Civil Service to schedule a competitive examination thwarted the legislative intent, subverted the "salutary aims of the civil service system," and was "reason enough to require that a provisional appointee who has served satisfactorily for an extended period of time be afforded the opportunity of attaining permanent status before being dislodged from the provisional position." 212 *N.J.Super.* at 121. In addition, the court found that O'Malley had a legitimate expectation arising from the statute that the examinations would be offered. *Ibid.* It found further that O'Malley was entitled to rely on "the representation by the Department of Energy that a permanent appointment would be made in accordance with Civil Service rules," and that "the continued uncertainty of demotion at any time without cause or a hearing" was "a sufficient detriment for invoking the estoppel doctrine, at least in this case." *Id.* at 123. We disagree.

## II

In one sense, the decision of the Appellate Division may be relegated to history. Effective September 25, 1986, the Legislature enacted the "Civil Service Act" (the 1986 Act), *N.J.S.A.* 11A:1–1 to 12–6. The 1986 Act repeals the original Civil Service legislation under which the present case arises. In another sense, however, the decision strikes at a longstanding practice affecting a substantial number of provisional employees in state, county, and municipal government, a class of employees that continues to be recognized under the 1986 Act, *N.J.S.A.* 11A:4–13.

■ Under the New Jersey Constitution, Civil Service appointments are to be made according to merit and fitness. *N.J. Const.* of 1947 art. VII, § 1, ¶ 2. Consistent with the constitutional mandate, this requirement appears in both the original, *N.J.S.A.* 11:9–1 & –2, and the 1986 Act, *N.J.S.A.* 11A:4–1, and in regulations promulgated under the original act, *N.J.A.C.* 4:1–1.1.

The policy underlying the merit and fitness requirement is the provision of efficient public service in state, county, and municipal government, *Walsh v. Department of Civil Serv.*, 32 *N.J.Super.* 39, 43 (App.Div.1954), free from political control and personal favoritism, *Conners v. City of Bayonne*, 36 *N.J.Super.* 390, 396 (App.Div.1955). To insure compliance with this policy, the Legislature devised a procedure providing for both provisional and permanent employment. Under the original act, whenever the chief examiner and secretary of the Civil Service Commission (Commission) considered it "necessary to meet the needs of the service," he or she was to "hold tests for the purpose of establishing employment lists for the various positions in the classified service." *N.J.S.A.* 11:9–1. The test scores were to be used to establish an employment list, and the persons tested ranked "in the order of their rating." *N.J.S.A.* 11:9–9. A permanent employee could be appointed only if included on the eligible list. *N.J.S.A.* 11:10–1.

Pending the establishment of an employment list, "if necessary to prevent the stoppage of public business or inconvenience to the public," a person could receive a provisional appointment. *N.J.S.A.* 11:10–3. The original act provided that "[n]o person shall * * * serve more than four months as a provisional appointee in any fiscal year." *Ibid.* A provisional appointment that extended beyond six months was to "be reported to the Commission with the reasons therefor." *N.J.A. C.* 4:1–14.1(a).

Commission regulations promulgated under the original act also recognized the difference between permanent and provisional employees. Permanent employees could be discharged or demoted only for cause, *N.J.A.C.* 4:1–16.8(a), and had the right to appeal and a hearing before the Commission prior to discharge, *N.J.A.C.* 4:1–5.2(a). A provisional employee, by comparison, could be terminated "at any time at the discretion of the appointing authority," and had no right of appeal to the Commission. *N.J.A.C.* 4:1–16.8(b); *cf. Williams v. Civil Serv. Comm'n,* 66 *N.J.* 152 (1974) (allowing provisional employee hearing before municipal employer, but not before a commission).

Notwithstanding the legislative directive that provisional employees were to serve not more than four months, thousands of provisional employees served for much longer periods. According to an affidavit filed in this proceeding by Robert J. Hartman, Deputy Commissioner of Civil Service, "it is impossible to establish a civil service eligibility list within four months of the appointment of a provisional employee."[1] Deputy Commission-

---

[1] In his Affidavit, Deputy Commissioner Hartman explains:

The Department receives 18,000 requests for examinations per year from the State, county and local appointment authorities under its jurisdiction. However, the Department only has the manpower and budget to handle around 10,000 requests per year. Moreover, it takes about a year, at best, to promulgate an eligibility list. It takes approximately five months to place an announcement for a test in the monthly job opportunities Bulletin, distribute the bulletin and collect applications from interested candi-

er Hartman concludes that as of the effective date of the 1986 Act, there were "approximately 4,500 provisional employees in State service who have served over four months as well as many others who are employed by county and municipal governments."

During legislative hearings on the 1986 Act, the president of the Commission, Eugene J. McCaffrey, Sr., explained the practical difficulties faced by Civil Service in scheduling examinations within four months. In an affidavit filed on this appeal, President McCaffrey stated further that he planned to

institute programs as will be permitted under the new legislation to reduce the number of employees in provisional status. In fact, we are committed to reduce employees in provisional status by between 1,500 and 2,000 within 60 to 90 days of the enactment of the reform bill.

Apparently President McCaffrey's efforts have been successful. When testifying before the Senate State Government Committee on April 30, 1987, he reported that 1,937 provisional employees received permanent appointments within ninety days of the enactment of the 1986 Act, and that the number of provisional state workers has been reduced from approximately 5,000 to 3,000. *Newark Star-Ledger*, May 1, 1987.

■ Under the original act, as the affidavits of President McCaffrey and Deputy Commissioner Hartman make clear, the reality was that the Commission could not prepare the Civil Service examinations in four months. The Legislature recognized the problem in the 1986 Act, and extended the preparation time to twelve months. *N.J.S.A.* 11A:4–13(b). Notwithstand-

---

dates. Another six months is needed before the test can be held. During this period the Department must review the applications to determine which candidates are eligible for the test and also develop the test itself, a process which includes careful review of test questions to ensure that they are fair, accurate and job-related. In addition, the candidates need this period to study and prepare for the test. The Department must then grade the tests and rank the candidates on an eligibility list * * *. In many cases candidates file administrative appeals or court actions challenging an aspect of the test, possibly necessitating further delay.

ing the practical problems confronting the Commission, it has a statutory duty to give timely examinations. *See Handabaka v. Division of Consumer Affairs,* 167 *N.J.Super.* 12, 15 (App.Div. 1979). The issue remains, nonetheless, whether the failure to give a timely examination vests O'Malley with the right to retain his provisional appointment until such time as an examination is given.

Neither the original act nor the 1986 Act expressly created such a right in favor of provisional employees. In addition, nothing in the legislative history suggests that the Legislature intended to create such a right. It is the welfare of the public, not that of a particular provisional employee, that underlies civil service legislation. We believe it would thwart the legislative intent to allow a provisional employee to retain his or her position merely because the Commission could not offer a timely test. To this extent we disagree with the Appellate Division's conclusion that O'Malley was entitled to rely on the Department's representation that a permanent appointment would be made in accordance with Civil Service rules.

■ We further disagree with the Appellate Division's conclusion that the Department and Civil Service are equitably estopped from transferring O'Malley from his provisional to his permanent position. Equitable estoppel is rarely invoked against a governmental entity, *Cipriano v. Department of Civil Serv.,* 151 *N.J.Super.* 86, 91 (App.Div.1977), particularly when estoppel would "interfere with essential governmental functions." *Vogt v. Borough of Belmar,* 14 *N.J.* 195, 205, 101 *A.*2d 849 (1954). Nonetheless, equitable considerations are relevant to assessing governmental conduct, *Skulski v. Nolan,* 68 *N.J.* 179, 198 (1975), and may be invoked to prevent manifest injustice, *Vogt v. Borough of Belmar, supra,* 14 *N.J.* at 205.

In the present case, however, we are persuaded that the legislative goal of appointments based on merit and fitness is the paramount consideration. With respect to provisional employees, that goal is met by competitive examinations, not by

holding a position beyond the time prescribed by the Legislature. *See Chambers v. Civil Serv. Comm'n*, 129 *N.J.L.* 191 (E. & A.1942). To this extent, we reject the dicta in *Omrod v. New Jersey Dep't of Civil Serv.*, 151 *N.J.Super.* 54 (App.Div.), certif. denied, 75 *N.J.* 534 (1977), upon which O'Malley relies.

In *Omrod*, plaintiff held a provisional appointment as a supervisor of recreation at the Vineland State School for eight years. After a competitive examination, a candidate who scored higher received the permanent appointment. The Appellate Division refused to replace that appointee with plaintiff, but said in passing:

> If we were concerned solely with the rights of the plaintiff in this situation we would not hesitate to hold that the [Civil Service's] failure to conduct the examination during the years in which plaintiff provisionally occupied the position with distinction equitably estopped that agency from now seeking to dislodge her from the job. [151 *N.J.Super.* 54, 59 (1977).]

Notwithstanding the *Omrod* court's understandable sympathy for the disappointed provisional employee and frustration with Civil Service's failure to schedule a timely examination, we believe the dictum rests on a misapplication of the doctrine of equitable estoppel. The essential elements of equitable estoppel are a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment. *Horsemen's Benevolent & Protective Ass'n v. Atlantic City Racing Ass'n*, 98 *N.J.* 445 (1985) (quoting *Carlsen v. Masters, Mates & Pilots Pension Plan Trust*, 80 *N.J.* 334, 339 (1979)); *Miller v. Miller*, 97 *N.J.* 154, 163 (1984).

■ Here, O'Malley's estoppel claim fails for several reasons. Neither the Department nor Civil Service ever made any misrepresentation to O'Malley. He was familiar with the civil service system, had received provisional appointments in the past, and knew that his appointment as an energy specialist was provisional. The June 1980 letter from Civil Service then ex-

pressly advised him that his provisional appointment was pending a permanent appointment from an employment list to be prepared "in accordance with civil service rules * * *."

Furthermore, the original and the 1986 Acts are legislative directives, not representations upon which individual employees may reasonably rely. In the absence of an express legislative direction, we are reluctant to permit employees to retain by estoppel their provisional appointments. To permit a provisional employee to retain such an appointment pending an examination would subject governmental employment to the subterfuge and circumventions that the civil service system was designed to prevent.

Additionally, nothing indicates that O'Malley relied to his detriment on any representations of the Department or Civil Service. Indeed, during his appointment he received a greater salary than he would have earned in his permanent position. Doubtless he was disappointed when he was returned to his permanent position at a reduced salary, but he has never said he would not have accepted the provisional appointment if he had known that he would not receive a permanent appointment. In fact, while serving as a provisional employee, he consistently took examinations for other positions. To conclude, O'Malley had no right to retain his provisional appointment as an energy specialist, and as Civil Service determined, he was not entitled to a hearing.

The judgment of the Appellate Division is reversed, and the order of the Civil Service Commission is reinstated.

*For reversal and reinstatement* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.