**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3202-18T4

JOHN ABEIGON,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION
AND ANNUITY FUND,

     Respondent-Respondent.

_____

> Argued November 16, 2020 – Decided January 5, 2021
>
> Before Judges Messano and Suter.
>
> On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.
>
> Colin M. Lynch argued the cause for appellant (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Colin M. Lynch, of counsel and on the briefs; Alvina Swati, on the brief).
>
> Alison Keating, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney

General, attorney; Sookie Bae, Assistant Attorney General, of counsel; Alison Keating, on the brief).

PER CURIAM

Appellant John Abeigon appeals the February 15, 2019 final agency decision by the Board of Trustees of the Teachers' Pension and Annuity Fund (TPAF Board) that denied his request to receive contributory and non-contributory life insurance or to convert his previously lapsed contributory group life insurance to an individual policy of insurance, and denied his request for a hearing at the Office of Administrative Law (OAL). For reasons that follow, we affirm.

I

Appellant was a teacher for the Newark Public Schools (Newark). As a teacher, he had non-contributory group life insurance paid by his employer and additional death benefits under contributory group life insurance that he paid. See N.J.S.A. 18A:66-38 and N.J.S.A. 18A:66-53. The insurance was issued by the Prudential Insurance Company (Prudential).

In 1994, appellant took a leave of absence from his teaching position to serve in the Newark Teachers' Union (NTU). He remains on leave because of his work with the NTU. He claims that when he commenced his leave of

absence, he was not advised the leave "would render [him] ineligible for either contributory or non-contributory life insurance . . . ."

Appellant acknowledged receiving a letter from the Division of Pensions and Benefits' (Division) Enrollment and Purchase Bureau Section dated September 3, 2010. The letter explained to pension members on leaves of absence for union business how to obtain "pension service credit for leave[s] of absence while serving as an elected or appointed officer or representative of a State labor organization . . . ." Members were advised based on a recent change in the law that they could "purchase [their] qualified union service as a personal leave of absence," but it was the member's obligation to timely submit the required forms.

The letter also addressed life insurance coverage for members on a leave of absence for union activity. The letter provided "union [l]eave is a non-illness leave of absence." Therefore, there was life insurance coverage only for a limited period. The non-contributory life insurance was "in effect for [ninety-three] days from the starting date of the [u]nion [l]eave." However, contributory life insurance "normally expires [thirty-one] days after the start of the [u]nion [l]eave." The letter advised, members could purchase an additional two months of coverage, but that after "[ninety-three] days of coverage, members have the

option [to] convert their life insurance to a private policy with Prudential." The Division acknowledged that because of its "delay in fully addressing the . . . conversion issue," appellant's time for the contributory life insurance conversion was extended for an additional thirty-one days, giving him until October 4, 2010, to ask Prudential to convert the policy to an individual policy.

The letter also refunded a payment of $111.61 to appellant that he had made for the contributory life insurance but advised that he could convert his policy as set forth in the letter. "[S]ince your group life insurance is now terminated, you have [thirty-one] days from the date of this letter to initiate the conversion process."

Appellant applied to Prudential for conversion on October 20, 2010, but his request was denied as untimely. The record does not show whether appellant challenged this denial.

Appellant received three letters from the Division's Office of Client Services responding to his requests for a statement of account. The three letters dated in 2013 and 2014 listed the amount of his contributions to the pension, the number of years and months of pension credit and stated "you have life insurance equal to 3 1/2 times your salary." The letter from July 2014 informed appellant he was "insured for group life insurance" where the policyholder was the State

A-3202-18T4

Treasurer and a "contributory insurance" policy where the TPAF Board was the policyholder.

Appellant acknowledged receiving a letter from the Division's Audit/Billing Section in August 2014, that returned a $62.34 payment he made for group life insurance. The letter stated that appellant's contributory life insurance lapsed in 2011.

In January 2015, appellant requested the Division to modify, retroactively, the contribution rate for purchasing pension service credit for the time he was on leave for union activities in fiscal years 2011 through 2014. In addition, he requested "an opportunity to convert his contributory life insurance benefit." He explained he was "advised that he currently is ineligible for contributory life insurance through TPAF" and that he was required to make the conversion "upon his initial commencement of [u]nion [l]eave" but that he was not aware of this at the time he commenced his leave. Because it was now past the time to convert, "he presently ha[d] no insurance through TPAF." Because appellant claimed he would have converted, he asked to have the life insurance restored or to be given the opportunity to convert it.

The TPAF Board Secretary responded in an email dated February 6, 2015, that appellant's request about the rate to purchase pension service credits was

A-3202-18T4

referred to the Budget and Compliance section for review. His request about the contributory life insurance was addressed by attaching a copy of the September 2010 letter.

In June 2016, appellant was successful in being able to purchase his pension service credits at a lower rate. Two years later in April 2018, appellant emailed the Division's Adjustment Section asking for a verification of life insurance letter. A specialist in that section emailed, advising appellant he did not have life insurance while he was on a leave of absence as a union representative. The email cited to the September 2010 letter, and explained that "[u]nion leave is a non-illness leave of absence." Appellant was offered the ability to convert in 2010.

On June 16, 2018, the Division's Chief of Operations for Retirement/Beneficiary Services responded to appellant's May 24, 2018 letter to the TPAF Board. The letter reiterated what had been explained to appellant in the September 2010 letter. Appellant's file "indicate[d] he was notified in September 2010 . . . that his [n]on-[c]ontributory [l]ife [i]nsurance coverage was considered expired [ninety-three] days after his [u]nion [l]eave began and the [c]ontributory portion expired [thirty-one] days after the date the leave began." The Division's records indicated that appellant "did not contact the division or

Prudential Insurance Company regarding converting his [c]ontributory portion during the extended time frame allotted . . . ." The Division explained because appellant "was afforded additional time to file for a conversion of life insurance coverage in 2010, [it] must deny his request to convert at this time." The letter noted the issue about purchasing union leave time service credits "[was] separate and apart from the issue of the life insurance coverage while on the leave of absence." If he were an active contributing member, however, he would be covered by the contributory and non-contributory life insurance.

Appellant appealed to the TPAF Board. In his supporting certification, he alleged he was not advised when he took the leave of absence that this "would render [him] ineligible for either contributory or non-contributory life insurance, or that [he] would be required to convert [his] contributory life insurance." Appellant understood the September 2010 letter "requiring conversion of contributory life insurance to be the result of my non-payment of TPAF contributions which was [the] subject of my appeal and . . . believed [he] rectified that issue upon the success of that appeal and subsequent payment of the reduced contributions pursuant thereto." Thus, appellant argued that he thought his success in June 2016 on the pension service credit issue somehow either restored the life insurance or opened his ability to convert it.

7

The TPAF Board's October 19, 2018 decision upheld the administrative decision of June 16, 2018 that had denied appellant's request to convert the contributory life insurance. The TPAF Board decision was based on the September 2010 letter and N.J.A.C. 17:3-3.10. Appellant had been given until October 4, 2010, to submit an application to convert but submitted his on October 20, 2010. He was notified on November 4, 2010, that his request was denied. The TPAF Board explained that in 2015, appellant was advised his request for pension service credits was different from converting the life insurance, but if he returned to active service with the TPAF, then he would be eligible for both contributory and non-contributory policies.

Appellant disagreed, appealing to the TPAF Board for reconsideration on November 30, 2018, and requesting a hearing. The TPAF Board determined there were no material facts in dispute and that an OAL hearing was not needed. In its final agency decision, dated February 19, 2019, the TPAF Board rejected appellant's arguments about converting his contributory life insurance. It found appellant was advised in 2010 about the timeframes for converting the life insurance. His leave was a "non-illness leave of absence." Appellant was given until October 4, 2010, to convert but did not exercise this in time. Appellant was notified in 2010 that his conversion application was denied.

The TPAF Board cited N.J.A.C. 17:3-3.10 in support. The TPAF Board found "there are no equitable arguments in favor of allowing [appellant] to appeal the TPAF Board's decision." The TPAF Board found the regulatory language to be "clear and unambiguous." Because there were no issues of disputed fact, the TPAF Board made findings of fact and conclusions of law without the need for a hearing.

On appeal, appellant raises the following issues:

Point I

THIS COURT SHOULD REVERSE THE DECISION OF THE BOARD OF TRUSTEES OF THE TEACHERS' PENSION AND ANNUITY FUND SINCE IT IS INCONSISTENT WITH, AND/OR IMPROPERLY APPLIES N.J.A.C. 17:3-3.10, OR IN THE ALTERNATIVE THE DECISION SHOULD BE REVERSED BECAUSE IT WAS ARBITRARY, CAPRICIOUS, AND UNREASONABLE.

   A. The Interpretation Of N.J.A.C. 17:3-3.10 Is A Question Of Law, And Therefore, It Should Be Reviewed Under The De Novo Standard.

   B. The TPAF Board's Decision Is Arbitrary, Capricious, And Unreasonable Because It Is Inconsistent With And Unsupported By Substantial Evidence In The Record.

Point II

ALTERNATIVELY, THE BOARD OF TRUSTEES OF THE TEACHERS' PENSION AND ANNUITY FUND'S

DECISION SHOULD BE REMANDED FOR HEARING ON
MATERIAL ISSUES OF FACT.

## II

Our review of an administrative agency's final decision is limited. Kadonsky v. Lee, 452 N.J. Super. 198, 201-02 (App. Div. 2017). "We will not reverse an agency's judgment unless we find the decision to be 'arbitrary, capricious, or unreasonable, or not supported by substantial credible evidence in the record as a whole.'" Id. at 202 (alteration in original) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). We "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018) (quoting In re Virtua-West Jersey Hosp., 194 N.J. 413, 422 (2008)). An agency is owed "some deference to its 'interpretation of statutes and regulations within its implementing and enforcing responsibility.'" Utley v. Bd. of Review, 194 N.J. 534, 551 (2008) (quoting In re Appeal by Progressive Cas. Ins. Co. 307 N.J. Super. 93, 102 (App. Div. 1997)). However, "if an agency's statutory interpretation is contrary to the statutory language, or if the agency's interpretation undermines the Legislature's intent, no deference is required." Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 485 (2008) (quoting In re N.J. Tpk. Auth. v. AFSCME, Council 73, 150 N.J. 331, 351 (1997)).

Appellant argues that his leave of absence for labor union activities is not personal leave but is a leave for service. He contends the regulation relied on by the TPAF Board is not applicable to "service leave" and only applies to members who "take an unpaid official leave of absence for personal illness, for personal reasons, and/or to fulfill a residency requirement." Appellant argues this is a question of law subject to de novo review.

The Teachers' Pension and Annuity Fund Law (TPAF), N.J.S.A. 18A:66-1 to -93, defines "teacher" to include among others, "any person who serves, while on an approved leave of absence from regular duties as a teacher, as an officer of a local, county or State labor organization which represents, or is affiliated with an organization which represents, teachers as defined in this subsection." N.J.S.A. 18A:66-2(p). Teachers are members of the TPAF. N.J.S.A. 18A:66-4. A person who is on an official leave from teaching and who is "an officer of a local, county or State labor organization which represents, or is affiliated with an organization which represents, teachers . . . shall receive credit in the retirement system for the service." N.J.S.A. 18A:66-14.2(a).

The TPAF statute provides for life insurance—referred to as a "death benefit"—for a "member in service," which is 1 1/2 times compensation. N.J.S.A. 18A:66-38(b). Under this statute, "a member of the retirement system

11

shall be deemed to be an active member . . . while he is disabled due to sickness or injury arising out of or in the course of his employment as a teacher . . . ." N.J.S.A. 18A:66-38. A member is also "an active member" if on an "official leave" due to maternity, "to fulfill a residency requirement for an advanced degree," or as "a full-time student at an institution of higher education, and for a period of not more than [ninety-three] days <u>while on official leave of absence without pay when such leave of absence is due to any reason other than illness</u>." <u>Ibid.</u> (emphasis added). Thus, the statute is addressed to all official leaves of absence without pay. There is nothing in the language to indicate that leave for service in a union is excepted from its provisions.

The TPAF provides for "optional death benefits," permitting members to elect "additional death benefit coverage" if certain conditions are met and contribute to its cost. N.J.S.A. 18A:66-53(b). This is referred to as contributory life insurance. N.J.S.A. 18A:66–53(e) provides for death benefits equal to two times the amount of the last year's compensation and requires the member to be "in service" at the time of death. A member is "deemed to be in service" if on official leave of absence due to illness under the limitations set forth in the statute. Union activity is not mentioned.

The TPAF statute provides a conversion privilege for the contributory group life coverage for members who have "ceased to be in service or ha[ve] retired . . . ." N.J.S.A. 18A:66-79. Within thirty-one days, the member may convert his or her policy to an individual policy. Ibid. This is consistent with conversion rights under group life insurance set forth in N.J.S.A. 17B:27-72(i).

N.J.A.C. 17:3-3.10 was promulgated to effectuate these provisions and provides:

> (a) Contributory insurance coverage will remain in effect for up to two years while a member is on an official leave of absence without pay for the personal illness of the member and without premiums paid by the member. The employer shall provide to the Division proof of the official leave of absence.
>
> (b) Contributory insurance coverage will remain in effect while a member is on an official leave of absence without pay for the following reasons, provided that insurance premiums are paid by the member within 31 days of the official start date of the leave. It is the member's responsibility to make arrangements directly with the Division to continue these premium payments:
>
> > 1. Up to one year to fulfill a residency requirement for an advanced degree; or as a full-time student at an institution of higher education; and
> >
> > 2. Up to [ninety-three] days on an official leave for any other reason.
>
> (c) Contributory insurance coverage will remain in effect for members who are receiving periodic benefits

13

directly from workers' compensation. No premiums are required pursuant to N.J.S.A. 18A:66-32.1.

[N.J.A.C. 17:3-3.10.]

We are required to apply the statutes as written. "If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." State v. Butler, 89 N.J. 220, 226 (1982). We are not to "speculate or otherwise engage in an interpretation which would avoid [the statute's] plain meaning." Sterling Laurel Realty, LLC v. Laurel Gardens Co-Op, Inc., 444 N.J. Super. 470, 476 (App. Div. 2016). However, "[i]f the plain language leads to a clear and unambiguous result, then the interpretive process should end, without resort to extrinsic sources." State v. D.A., 191 N.J. 158, 164 (2007).

Pension statutes are to be construed liberally based upon their remedial character. Bumbaco v. Bd. of Trs. Pub. Emps.' Ret. Sys., 325 N.J. Super. 90, 94 (App. Div.1999). However, "[a]n administrative agency may not under the guise of interpretation extend a statute to include persons not intended, nor may it give the statute any greater effect than its language allows." Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528 (1964).

The statutes do not make a distinction between personal leave and service leave. They are very clear that except in limited situations, the contributory and

14

non-contributory life insurance terminates unless there is a conversion within a limited window of opportunity.

Appellant suggests that N.J.S.A. 18A:66-14.2 provides support for his position that service leave is separate and not subject to N.J.S.A. 18A:66-38 or N.J.S.A. 18A:66-53. That statute provides that any person who takes a leave of absence from their regular duties as a teacher to serve as an officer of a teacher's union shall receive credit in the retirement system for their service. However, N.J.S.A. 18A:66-14.2 is concerned with service time for pension benefits. It does not deal with a member's eligibility for life insurance while on a leave of absence.

Appellant's contention that TPAF Employers' Pensions and Benefits Administration Manual (Manual) supports his position is simply a restatement of the same argument. The Manual provision cited by appellant is part of the "Purchase of Service Credit" section. Appellant did not include the section on "Group Life Insurance Coverage." The issues are treated separately by the Manual.

Appellant missed the deadline for converting his policy. Having failed to make the deadline, appellant's life insurance coverage was terminated by

15

operation of N.J.A.C. 17:3-3.10 upon his failure to convert the policy within thirty-one days of the September 3, 2010 letter.

Appellant argues that the final agency decision is arbitrary and capricious. He claims he relied to his detriment on the representations in 2013 and 2014 that he had life insurance benefits. He argues he discontinued a personal policy of insurance on this basis. He contends that factual questions require a hearing about whether there was detrimental reliance and conflicting positions taken by the TPAF.

When an appeal to the TPAF Board "involves solely a question of law, the Board may retain the matter and issue a final determination which shall include detailed findings of fact and conclusions of law based upon the documents, submissions and legal arguments of the parties." N.J.A.C. 17:3-1.7(a)(4). However, when the appeal "involves a question of facts, the Board shall submit the matter to the [OAL]." N.J.A.C. 17:3-1.7(a)(5).

We agree with the TPAF Board that there was no need for a hearing at the OAL. Appellant was advised in 2010 he did not have life insurance, which he applied for and then missed the opportunity to convert. The one-page reference to his personal policy of insurance shows a date in 2012, indicating it may have been issued then. Appellant repeatedly requested information from the Division

16

about his account in 2013 and 2014. These letters did indicate insurance coverage. However, by August 2014, the Division returned his payment because his policy had lapsed. The Division's position was consistent from that point forward that there was no insurance coverage. There is no documentary evidence that appellant cancelled his private insurance policy or when this may have occurred. There also is no evidence that he was unable to reapply for coverage at any time after 2014.

Appellant claims he is entitled to a hearing because he relied to his detriment on the letters from 2013 and 2014. "Equitable estoppel is rarely invoked against a governmental entity . . . ." O'Malley v. Dep't of Energy, 109 N.J. 309, 317 (1987). It can be invoked, however, "to prevent manifest injustice." Ibid. The elements of equitable estoppel include "a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment." Ibid.

Appellant has not alleged that the letters in 2013 and 2014 were intended to misrepresent the terms of his coverage. The statutes and regulations were clear. Appellant was repeatedly told he had no life insurance coverage. This was the case in 2010, 2014 and after that. He acknowledged a lack of coverage.

Any reliance on the letters was not reasonable. He has not established a manifest injustice. He suffered no prejudice because he has not utilized the death benefit and has not claimed an inability to obtain insurance.

After carefully reviewing the record and the applicable legal principles, we conclude that appellant's further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3202-18T4