**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1264

NAFTALI KUNSTLINGER as Trustee of
THE PINCHAS STOLPER INS TRUST 3/06/08,
Appellant

v.

LINCOLN BENEFIT LIFE COMPANY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:22-cv-04534)
U.S. District Judge: Honorable Edward S. Kiel
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 10, 2025
_____

Before: SHWARTZ, MATEY, and MONTGOMERY-REEVES, Circuit Judges.

(Filed: November 14, 2025)

_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Naftali Kunstlinger, as Trustee of the Pinchas Stolper Ins Trust 3/06/08 (the "Trust"), appeals the District Court's order granting Lincoln Benefit Life Company ("Lincoln") summary judgment on Kunstlinger's breach of contract and estoppel claims. For the following reasons, we will affirm.

I

A

In 2008, Lincoln issued a $7.5 million life insurance policy to the Trust that insured the life of Phineas "Pinchas" Stolper. According to the Policy, if the Trust failed to make the required payments, Lincoln would provide a sixty-one day grace period before coverage lapsed, and notify the Trust of the nonpayment "at least [thirty] days prior to the day coverage lapses." App. 64.

From April 2011 through May 2021, Kunstlinger made monthly payments of either $19,995.50 or $19,996.50. In a December 2020 letter, Lincoln informed Kunstlinger that the Policy had entered the 61-day grace period and would terminate unless a $116,841.94 minimum payment was made on or before February 14, 2021.

Kunstlinger called Lincoln in February 2021, inquiring about this letter and the minimum payment amount. A Lincoln representative told Kunstlinger that a "surrender charge"[1] led Lincoln to issue the December 2020 grace period notice. App. 357. Kunstlinger inquired whether he had to make the $116,841.94 payment listed in the letter.

_____

[1] A "surrender charge" is a set amount Lincoln will charge upon termination of the Policy.

2

The Lincoln representative replied, "[a]s of right now, your policy is not in a grace [period]," because other payments had been received since the letter was sent, and that he arranged for Kunstlinger to receive an "illustration so [he would] . . . know . . . the minimum premium . . . need[ed] to . . . keep [the Policy] active so that this doesn't happen again." App. 357. The Lincoln representative confirmed that the Policy was active "as of now." Id.

The next day, Lincoln sent Kunstlinger an illustration (a status report about the Policy). The cover letter accompanying the illustration advised Kunstlinger that the Policy "requires [an] immediate lump sum [payment] in the amount of $206,000 to carry the policy through current year." App. 360. In a March 15, 2021 letter, Lincoln informed Kunstlinger that the Policy had entered a grace period and would terminate at the end of a 61-day period unless a $150,657.27 minimum payment was made on or before May 15, 2021. Kunstlinger ignored this letter and continued to make payments of only $19,996.50. In a May 2021 letter, Lincoln informed Kunstlinger that "[t]he grace period has expired and [the] policy has lapsed with no value and all benefits are forfeited and void." App. 427. Stolper died in May 2022, and Lincoln declined to pay the death benefit.

B

Kunstlinger sued Lincoln, alleging that Lincoln breached the Policy by not paying the death benefit and that Lincoln was equitably estopped from terminating the Policy. Following discovery, both parties moved for summary judgment.

3

The District Court denied Kunstlinger's motion for summary judgment and granted Lincoln's cross-motion for summary judgment, holding: (1) the March 2021 grace notice Lincoln provided Kunstlinger was valid under the Policy even though it did not specify a minimum payment amount due, and (2) Lincoln was not equitably estopped from terminating the Policy based on the February 2021 phone call because Lincoln did not misrepresent what payments were required to keep the Policy in force, and, in any event, Kunstlinger was not reasonably misled because the Policy and information he received in February and March 2021 should have corrected any misconception about the payments. Kunstlinger as Tr. of Pinchas Stolper Ins Tr. 3/06/08 v. Lincoln Benefit Life Co., No. 22-cv-04534, 2025 WL 252432, at *5-10 (D.N.J. Jan. 21, 2025).

Kunstlinger appeals.

## II[2]

### A

We first consider Kunstlinger's claim that the grace notice was invalid. Under New Jersey law,[3] "an insurance policy should be interpreted according to its plain and ordinary meaning." Voorhees v. Preferred Mut. Ins. Co., 607 A.2d 1255, 1260 (N.J.

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of the District Court's order granting summary judgment. Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 871 n.3 (3d Cir. 2015). We apply the same standard as the District Court, viewing facts and drawing all reasonable inferences in the non-movant's favor. Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

[3] The parties agree New Jersey law applies.

1992).  The plain and ordinary meaning of the Policy's terms therefore governs the grace notice's requirements.

The notice here fulfills the Policy's requirements.  First, the Policy provides that Lincoln "will send a written notice to the [policyholder's] most recent address . . . at least 30 days prior to the day coverage lapses."  App. 64.  Lincoln notified Kunstlinger in writing on March 15, 2021, that the Policy had entered a grace period and would terminate unless a $150,657.27 minimum payment was made by May 15, 2021—more than 30 days from the letter's date.  Second, contrary to Kunstlinger's assertion, neither the Policy nor New Jersey law require grace notices to include the amount due to keep the policy active.  App. 64 (Policy stating only "[i]f you do not make sufficient payment by the end of the grace period, the certificate will lapse"); N.J. Admin. Code § 11:4-41.3(b)(2) (state law requiring only that policies include grace period).  Without that baseline obligation, the parties' dispute over whether the amount requested in the grace notice accurately described the minimum payment necessary to prevent lapse through May 15, 2021, is immaterial.  See Razak v. Uber Techs., Inc., 951 F.3d 137, 145 n.8 (3d Cir. 2020) ("Summary judgment is correctly granted in many situations where the parties genuinely dispute facts but where the dispute is not material to the adjudication of the case."), amended, 979 F.3d 192 (3d Cir. 2020).[4]

---

[4] The parties' dispute about whether the Policy should have entered grace on December 15, 2020, based on the surrender value at that time, is not material to whether the Policy lapsed because the Policy did not lapse due to Kunstlinger's failure to heed the December 2020 grace notice.  Rather, it lapsed due to Kunstlinger's failure to heed the March 15, 2021 grace notice.  See Razak v. Uber Techs., Inc., 951 F.3d 137, 145 n.8 (3d Cir.), amended, 979 F.3d 192 (3d Cir. 2020).

Because the notice complied with the Policy, summary judgment was correctly granted in favor of Lincoln.

B

The District Court also properly granted Lincoln summary judgment on Kunstlinger's equitable estoppel claim. "Equitable estoppel applies when 'conduct, either express or implied, . . . reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law.'" D'Agostino v. Maldonado, 78 A.3d 527, 546 (N.J. 2013) (quoting McDade v. Siazon, 32 A.3d 1122, 1132 (N.J. 2011)). Equitable estoppel requires, among other things, "[1] a knowing and intentional misrepresentation" and "[2] reliance by the party seeking estoppel." Id. (quoting O'Malley v. Dep't of Energy, 537 A.2d 647, 651 (N.J. 1987)). "[O]nly justified and reasonable reliance warrant the application of equitable estoppel." Palatine I v. Plan. Bd., 628 A.2d 321, 330 (N.J. 1993) (emphases omitted).

Lincoln is not estopped from terminating the Policy based on the February 2021 phone call. First, Lincoln made no misrepresentation during the call. Although the Lincoln representative said the December 2020 grace notice was "not really anything to worry about," he followed that with, "let me just confirm that for you," App. 356, and then explained: "[a]s of right now, your policy is not in a grace [period] because we did get two payments to keep it going" in between the December 2020 grace notice and the phone call, App. 357. The Lincoln representative stressed that he would send Kunstlinger an illustration "so [he could] know what that minimum premium would need to be to keep [the Policy] active so that this doesn't happen again." Id. The Lincoln

6

representative (1) did not say that the notice was sent in error; (2) did not advise Kunstlinger to ignore future grace notices; and (3) made no assurances that the monthly amount Kunstlinger had been paying was sufficient to prevent lapse indefinitely. Because Lincoln made no misrepresentation during the call, Kunstlinger's equitable estoppel claim fails. Cf. O'Malley, 537 A.2d at 651.

Second, even if Lincoln had misrepresented Kunstlinger's payment obligations during the February 2021 call, Kunstlinger's assertion that he was permitted to continue paying $19,996.50 monthly to keep the Policy in force was neither justified nor reasonable because it conflicts with the Policy language and information Kunstlinger received before and after the call. The Policy provides: "Payments are flexible. . . . The amount you pay will affect the certificate value. If you pay too little, the certificate will lapse subject to the grace period." App. 64. Moreover, according to annual statements Kunstlinger received between July 2017 and July 2020, the Policy's accumulated value was dropping even while Kunstlinger was making monthly $19,996.50 payments. The July 2020 annual statement warned that, given certain assumptions, "the Policy's Net Cash Surrender Value will not maintain insurance in force until the end of the next reporting period unless further premium payments are made." App. 347-48. To this end, in February 2021, Kunstlinger received an illustration stating that a $206,000 lump sum payment was required to carry the Policy through the current year, but he made no such payment. The Policy and these communications show that Kunstlinger's reliance on the February 2021 call was neither justified nor reasonable.

For these reasons, Kunstlinger's equitable estoppel claim fails.

## III

For the foregoing reasons, we will affirm.