NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0696-14T4

STERLING LAUREL REALTY, LLC,
individually and derivatively
on behalf of LAUREL GARDENS
CO-OP, INC., and MICHAEL ROKOWSKY,
as a member of the Board of
Directors of Laurel Gardens
Co-Op, Inc. through appointment by
Sterling Laurel Realty, LLC,

      Plaintiffs-Appellants,

v.

LAUREL GARDENS CO-OP, INC.,
DANIEL HUDSON, ROSEMARY
FARRELL, ROBERT STANZIONE
and CHRISTINE HOIE,

      Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **April 5, 2016**
>
> **APPELLATE DIVISION**

Argued February 2, 2016 — Decided April 5, 2016

Before Judges Reisner, Hoffman and Leone.

On appeal from Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. C-120-13.

Steven Siegel argued the cause for appellants (Sills Cummis & Gross, P.C., attorneys; Mr. Siegel, of counsel and on the briefs; Anthony S. Bocchi, of counsel).

Martin N. Crevina argued the cause for respondents as to Counts I, II and IV (Buckalew Frizzell & Crevina, LLP, attorneys; Mr. Crevina, on the brief).

Sandra Calvert Nathans argued the cause for respondents as to Counts III, V and VI (Schenck, Price, Smith & King, LLP, attorneys; Ms. Nathans and James A. Kassis, on the brief).

The opinion of the court was delivered by

HOFFMAN, J.A.D.

Plaintiffs Sterling Laurel Realty, Inc. (Sterling) and Michael Rokowsky appeal from two Chancery Division orders entered on September 19, 2014. The first order denied plaintiffs' motion for partial summary judgment, and the second order granted summary judgment in favor of defendants Laurel Gardens Co-Op, Inc. (the Co-Op), Daniel Hudson, Rosemary Farrell, Robert Stanzione, and Christine Hoie,[1] dismissing plaintiffs' complaint. The central issue in this case is whether a majority of the Co-Op's Board could amend the bylaw definition of a quorum (for purposes of shareholder meetings) from a majority of the shareholders to twenty percent of the shareholders. Because allowing the Board to change the quorum definition by amending the bylaws would allow it to reduce the rights of the shareholders without their involvement, we conclude the bylaw amendment was invalid. We therefore affirm in part, and reverse and remand in part.

---

[1] Hudson, Farrell, Stanzione, and Hoie are shareholders in the Co-Op and are also four of the seven members of its Board of Directors (the Board).

I.

We glean the following undisputed facts from the summary judgment record. The Co-Op is a New Jersey corporation that owns and operates a residential apartment complex in Eatontown. Sterling was the Co-Op's sponsor regarding its conversion to the cooperative form of ownership and continues to own approximately twenty-five percent of the cooperative apartments, and thus holds approximately twenty-five percent of the Co-Op's total stock. As the Co-Op's sponsor, Sterling is entitled to appoint two individuals to the Board, one of whom is Rokowsky.

Since its inception in 1986, the Co-Op has been controlled by two governing documents: (1) the certificate of incorporation, and (2) the bylaws. The one-page certificate of incorporation simply sets forth the Co-Op's name, purpose, address, and authorized number of shares. The twenty-one page bylaws explain in detail the methods and procedures governing the operation of the Co-Op.

Four bylaws have particular relevance to the case under review. First, Article I, Section 4 (the shareholder-quorum provision) establishes the requisite quorum for shareholder meetings, requiring the presence, "either in person or by proxy[, of] the holders of a majority of the shares of the Cooperative, including unsold shares," in order "to permit the

transaction of any business."  Second, Article II, Section 5 (the Board-quorum provision) establishes the requisite quorum of directors for Board meetings, requiring the presence of "a majority of the number of directors" in order to hold a vote on any measure requiring Board approval.  Third, Article X, Section 2 authorizes the Board to amend the bylaws by a two-thirds vote.  Finally, Article X, Section 3 (the sponsor-protection provision) protects Sterling's rights, stating that

> any provision hereof may not be altered, amended or repealed in such a manner as would adversely affect the rights or interests of the Sponsor under [the] Offering Plan (or its successors and assigns) in any shares and accompanying proprietary leases that may have been pledged with the Sponsor in connection with financing the purchase of apartments in the building.

On June 1, 2012, Hudson, as the Board President, sent a notice to the Co-Op's shareholders informing them of a shareholders meeting scheduled for June 18, 2012.  Attached to this notice was a proposed amendment to the Co-Op's bylaws (the sublease amendment) that would require, "as a pre-condition for any application to sublease a [Co-Op] Apartment, that the Apartment Owner shall have acquired the Apartment for a minimum of one (1) year before applying to sublease the Apartment."  By limiting the scope of permissible subleases, the amendment, if enacted, would ultimately reduce the ratio of rental units to

4

owner-occupied units within the Co-Op. Due to market conditions, reducing this ratio would make it easier for prospective buyers to obtain financing to purchase a share of the Co-Op. The amendment contained a provision exempting Sterling from the sublease restriction.

Plaintiffs expressed concerns about the sublease amendment and the effect it would have on Sterling's rights as the Co-Op's sponsor.[2] On July 15, 2012, Rokowsky sent a letter to the other Board members, claiming that the sublease amendment would violate the sponsor-protection provision. The letter explained:

> The proposed amendment will harm the interests of [Sterling] in that we may choose to sell our units to potential purchaser(s) who are investor(s) . . . who would want to sublease their units rather than occupy the units themselves.
>
> The proposed amendment which would restrict them from doing so for one year, and would cause such purchasers to shy away from purchasing our units, thus adversely affecting the pool of our potential purchasers and making it reduce the value of our units.

---

[2] Rokowsky sent an email to the Board's administrative assistant on June 6, 2012, requesting a complete list of all shareholders, including addresses, so that plaintiffs could state their concerns to the shareholders. Although the Board had not provided plaintiffs with such a list at the time they filed their complaint, plaintiffs thereafter received the list.

A-0696-14T4

Although defendants planned for a shareholder vote on the sublease amendment at the June 18, 2012 shareholders meeting, not enough shareholders were present at the meeting to establish a quorum.[3] Defendants scheduled another vote for July 19, 2012, but again no quorum of shareholders was reached. Accordingly, defendants scheduled a third shareholders meeting to take place immediately after the Board's monthly meeting on August 9, 2012. This time, in addition to the proposed sublease amendment, defendants proposed an amendment to the shareholder-quorum provision (the shareholder-quorum amendment). The shareholder-quorum amendment would reduce the necessary quorum from "a majority of the shares of the cooperative" to "twenty (20%) percent of the shares of the cooperative." This amendment was intended as a cost-saving measure, due to the time and cost associated with rescheduling shareholders meetings that fail to reach a quorum.

On August 7, 2012, Rokowsky sent another letter to the rest of the Board, objecting to the shareholder-quorum amendment. In addition to citing to several New Jersey statutes that he claimed prohibited the amendment, Rokowsky argued that

> only requiring a Twenty percent quorum does
> not and [cannot] accurately reflect the

---

[3] Neither Sterling nor its appointed Board members attended this meeting, or any relevant meeting thereafter.

interests of a majority of shareholders and specifically that this would allow matters to be voted on at regular or special shareholder meetings without requiring the presence, or input of a Holder of Unsold Shares. Furthermore the proposed amendment will harm the interests of Sterling, Holder of Unsold Shares in that it will lower the property values of units at [the Co-Op] because potential purchasers will shy away from purchasing units at [the Co-Op] due to the fact that Shareholders meetings can go forward with only a twenty percent shareholder representation and change gravely important matters at their whim.

The five Board members present at the August 9, 2012 meeting unanimously approved both the shareholder-quorum and sublease amendments to the bylaws.

On July 29, 2013, plaintiffs filed a six-count verified complaint against the Co-Op and the Board members who approved the amendments. In addition to asserting claims of shareholder oppression, breach of contract, and tortious interference, plaintiffs sought two forms of injunctive relief: a declaratory judgment pronouncing the amendments null and void, and an order enjoining the Co-Op from enforcing the amendments. At the close of discovery, the parties filed cross-motions for summary judgment.

After hearing oral argument, the motion judge concluded that neither amendment violated the sponsor-protection provision, and that the Board had the authority to amend the

shareholder-quorum provision. Accordingly, the judge denied plaintiffs' motion, granted defendants' cross-motion, and dismissed plaintiffs' complaint with prejudice.

Plaintiffs filed this appeal on October 3, 2014, initially challenging the validity of both the shareholder-quorum and sublease amendments; however, at oral argument, plaintiffs advised that they had abandoned their challenge to the sublease amendment, thus limiting their arguments on appeal to the validity of the shareholder-quorum amendment.

## II.

When reviewing an order granting summary judgment, we "employ the same standard [of review] that governs the trial court." Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010) (quoting Busciglio v. DellaFave, 366 N.J. Super. 135, 139 (App. Div. 2004)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

In support of their challenge to the validity of the shareholder-quorum amendment, plaintiffs argue that the New Jersey Business Corporation Act (the Act), N.J.S.A. 14A:1-1 to

17-18, precludes the Board from unilaterally reducing the Co-Op's shareholder-quorum requirement. Defendants counter by arguing that N.J.S.A. 14A:2-9 authorizes the Board to amend a bylaw provision to lower the quorum requirement. We agree with plaintiffs.

When interpreting a statute, we give the relevant language its ordinary meaning and construe it "in a common-sense manner." State ex rel. K.O., 217 N.J. 83, 91 (2014); see also N.J.S.A. 1:1-1 (stating that the words of a statute are customarily construed according to their generally-accepted meaning). We do not add terms which may have been intentionally omitted by the Legislature, nor do we speculate or otherwise engage in an interpretation which would avoid its plain meaning. DiProspero v. Penn, 183 N.J. 477, 492 (2005). Where plain language "leads to a clear and unambiguous result, then the interpretive process should end, without resort to extrinsic sources." State v. D.A., 191 N.J. 158, 164 (2007) (citation omitted).

Here, the applicable statutory language leads us to a clear and unambiguous result. N.J.S.A. 14A:5-9 states, in pertinent part: "Unless otherwise provided in the certificate of incorporation or this act, the holders of shares entitled to cast a majority of the votes at a meeting shall constitute a quorum at such meeting." We interpret this plain language to

mean that, in order to hold a vote amongst the Co-Op's shareholders, a majority of all shares in the Co-Op must be represented at the meeting. We further conclude, based on the plain language of the statute, that a valid modification of the Act's majority quorum requirement in this case could occur only by amending the Co-Op's certificate of incorporation.[4]

A straightforward application of this interpretation reveals that defendants' attempt to alter the shareholder-quorum requirement using the bylaws was improper. The Co-Op's certificate of incorporation does not address the quorum required to conduct business at shareholders meetings. Thus, the Act's majority quorum requirement clearly controls.

Defendants emphasize that, at all relevant times, the Board had the authority to amend the bylaws. Notwithstanding this position's factual accuracy, the Board's general ability to amend the Co-Op's bylaws lacks relevance here. N.J.S.A. 14A:5-9 makes clear that an amendment to a corporation's bylaws is

---

[4] Although we need not address legislative history when confronted with unambiguous statutory language, we briefly note that the Act's legislative history supports our interpretation in this case. The commissioners' comments indicate that the Act's requirement — that an entity must indicate a deviation from the Act's default majority quorum provision in its certificate of incorporation — is "a change from [repealed] R.S. 14:10-9, which permits [a deviation from the default majority quorum provision] to be set forth in the bylaws." N.J.S.A. 14A:5-9 (Comm'rs' cmt 1968).

insufficient to supplant the default majority quorum requirement set forth in the Act; only an amendment to the certificate of incorporation — which can only be approved by a vote of the shareholders, see N.J.S.A. 14A:9-2(4) — could legally alter the Co-Op's shareholder-quorum requirement.

Defendants also contend that they were, for all practical purposes, left with no choice but to reduce the shareholder-quorum requirement, by way of a Board-approved amendment to the bylaws. They argue that plaintiffs, due to their substantial percentage of shares owned, were preventing the shareholders from conducting any meaningful business by boycotting the shareholder meetings.

We find this argument equally unpersuasive. Despite defendants' arguments to the contrary, they had two methods available to them for addressing plaintiffs' perceived obstructive behavior. N.J.S.A. 14A:5-2 permits shareholders to initiate General Equity litigation to obtain a court-ordered shareholders meeting. At such a meeting, the majority quorum requirement would have been waived by operation of law, because "the shareholders present in person or by proxy and having voting powers shall constitute a quorum for the transaction of the business designated in such order." Ibid. Alternatively, defendants could have convinced a majority of the shareholders

to attend the annual shareholders meeting and vote to amend the certificate of incorporation to reduce the quorum requirement.

However, as defendants did not use either of these methods to hold a shareholders meeting, we conclude that the Act's default majority quorum provision controls, and defendants' unauthorized amendment to the shareholder-quorum provision violated the Act's clear and unambiguous terms. See also In re Brophy, 13 N.J. Misc. 462 (Sup. Ct. 1935) (establishing that, if a statute requires an authorization or limitation to be set forth in the certificate of incorporation, an action setting it forth in the bylaws will be insufficient); Jones v. Wallace, 628 P.2d 388, 391 (Or. 1981) (invalidating, pursuant to the Oregon Business Corporation Act, O.R.S. 57.165, a bylaw amendment altering the corporation's shareholder-quorum requirement when no such amendment was made to the entity's articles of incorporation).

Allowing the Board to change the shareholder-quorum requirement through a bylaw amendment would effectively reduce the rights of shareholders without their consent or participation. We find such a result to run contrary to the Legislature's intent in adopting the Act. See Vergopia v. Shaker, 191 N.J. 217, 235—36 (2007) (holding that a board of directors cannot create bylaws that will substantially interfere

with the statutory rights given to shareholders). Therefore, we reverse the motion judge's determination with regard to count one.

We further conclude that the claims seeking disclosure of the shareholder list are moot, as the list has been provided. Additionally, the claims seeking damages were properly dismissed as unsupported by proof of damages. Plaintiffs' arguments to the contrary lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Therefore, we affirm the motion judge's dismissal of counts two through six of plaintiffs' verified complaint, and reverse the dismissal of count one. We remand to the Chancery Division for the limited purpose of entering an order invalidating the Co-Op's bylaw amendment to Article I, Section 4, adopted by the Board on August 9, 2012.

Affirmed in part, reversed and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0696-14T4