**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3977-19

CALLAREMI CADILLAC
BUICK GMC, INC.,

     Petitioner-Appellant,

v.

JERSEY CENTRAL POWER
AND LIGHT COMPANY,

     Respondent-Respondent.

_____

     Submitted October 14, 2021 – Decided November 19, 2021

     Before Judges Hoffman, Whipple and Geiger.

     On appeal from the New Jersey Board of Public Utilities, Docket No. EC19090999.

     Noel E. Schablik, attorney for appellant.

     Connell Foley, LLP, attorneys for respondent Jersey Central Power and Light Company (Leo J. Hurley, Jr., of counsel and on the brief).

     Andrew J. Bruck, Acting Attorney General, attorney for respondent New Jersey Board of Public Utilities (Sookie Bae-Park, Assistant Attorney General, of

counsel; Terel L. Klein, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Callaremi Cadillac Buick GMC, Inc. appeals from a final decision of the Board of Public Utilities (the Board) adopting the initial decision of the Administrative Law Judge (ALJ), denying petitioner's motion for summary decision and granting respondent Jersey Central Power and Light Company's cross-motion for summary decision. Respondent incorrectly calculated petitioner's electric usage by using an improper meter constant. Respondent sought to make a retroactive billing adjustment to reflect the correct meter constant. Petitioner contested the billing adjustment. The Board concluded that petitioner "failed to bear its burden of proof . . . that it was improperly billed" by respondent and dismissed its petition. We affirm.

I.

We ascertain the following facts from the record. Petitioner operates a retail new car dealership on Route 46 in Mount Olive Township, Morris County. Petitioner has been a non-residential electric service customer of respondent since September 1974.

From June 2009 through February 2019, electric usage at petitioner's property was measured by electric meter S07018655 (the old meter). In

February 2019, the old meter was replaced with meter S322924098 (the new meter) as part of a scheduled replacement. The new meter is the same type of meter as the old meter.

In an affidavit, Doug Meneeley, a distribution technician in respondent's meter services department, explained that respondent calculates a customer's electric usage by taking the usage registered by the meter during the billing period and multiplying that number by the appropriate "meter constant" for that type of meter. According to Meneeley,

> A meter constant is a number used in the calculation of a customer's usage in certain circumstances based on the configuration of the customer's electric service. A meter constant is necessary when the amount of energy is too large to be registered on a meter display. . . . The meter constant for the current transformers remains the same regardless the specific electric service meter in use, so long as the type of meter is the same.

Meneeley further explained that, to determine a customer's actual usage for billing purposes, respondent must subtract the number displayed on the customer's meter at the end of the billing period from the number displayed on the customer's meter at the end of the prior billing period, and then multiply the resulting number by the meter constant.

The meter constant that respondent used to calculate petitioner's electric usage since at least March 2013 was thirty. In February 2019, the electric meter

3

at petitioner's property was audited pursuant to a meter work notification.  The audit revealed that the appropriate meter constant was actually forty.  On March 6, 2019, a supervisor visited the property and verified that respondent had used the wrong meter constant to calculate petitioner's electric bill since at least March 2013.

On March 25, 2019, respondent tested the old meter.  The old meter tested within the accuracy parameters required by the Board.  The parties agree that petitioner did not tamper with the old meter during the service period at issue.

As a result of the incorrect meter constant that respondent used to calculate petitioner's electric usage, petitioner had been under-billed for electric service.  On April 23, 2019, respondent informed petitioner that it would be re-billing petitioner for electric service to recover some of the losses it incurred from using the incorrect meter constant.

On April 29, 2019, respondent sent petitioner an invoice containing a billing adjustment, after applying the correct meter constant.  The total adjustment was $33,467.65.  Including other adjustments and the account balance prior to adjustment, petitioner's total account balance was $34,742.16.[1]

_____

[1] On September 19, 2019, respondent issued a revised invoice in the amount of $38,256.70.  The revised amount reflected the amounts owed for electric service

Thereafter, petitioner filed a verified petition against respondent, challenging the legality of respondent's billing adjustment. On October 7, 2019, respondent filed a verified answer, asserting that Section 3.06 of its tariff authorized it to make the retroactive billing adjustment. In its reply to respondent's verified answer, petitioner asserted that respondent is barred from making the billing adjustment under N.J.A.C. 14:3-4.6(d). On October 23, 2019, the Board transmitted the matter to the Office of Administrative Law as a contested case.

The parties then filed cross-motions for summary decision. On March 5, 2020, an ALJ denied petitioner's motion for summary decision and granted respondent's cross-motion for summary decision. The ALJ concluded that N.J.A.C. 14:3-4.6(d) does not govern this case because the meter did not fail to register 100 percent of service. Rather, respondent "simply undercharged [petitioner] because [respondent] applied the wrong meter constant, that is, [respondent] applied a meter constant of [thirty] instead of a meter constant of [forty] in the billing calculation, for which it seeks a billing adjustment." The

provided by three different third-party suppliers that provided electric service to petitioner during the six-year re-bill period. The bill included the following amounts: $4,397.62 for services provided by JCP&L; $12,421.40 for services provided by Hudson Energy Services; and $21,437.68 for services provided by Direct Energy Business, LLC.

A-3977-19

ALJ concluded that, under Section 3.06 of respondent's Tariff for Service, respondent is authorized to make the billing adjustment under Section 3.06's "any other legitimate reason" clause, which allows re-billing for adjustments dating back up to six years.

On May 20, 2020, the Board adopted the ALJ's initial decision as its final agency decision. The Board concluded that N.J.A.C. 14:3-4.6(d) does not govern this case because "[t]his is not a case where a meter has been found to be registering less than 100 percent of service." The Board determined that "[t]he billing discrepancy was caused not by a faulty meter, but by multiplying the meter's measurement by an incorrect meter constant." The Board accepted the ALJ's determination that the "any other legitimate reason" clause in Section 3.06 of respondent's tariff applies in this case and authorizes the billing adjustment. The Board therefore adopted the ALJ's initial decision as its final decision and dismissed petitioner's case. This appeal followed.

II.

Our review of an agency's final administrative determination is limited. In re Carter, 191 N.J. 474, 482 (2007). Such determinations are not overturned "in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence." Ibid. (quoting Campbell v. Dep't

6

of Civ. Serv., 39 N.J. 556, 562 (1963)). In reviewing an agency's final determination, we review:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995) (citation omitted).]

An appellate court is "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973). However, "[a]n administrative agency's interpretation of a statute it is charged with enforcing is entitled to great weight." In re Saddle River, 71 N.J. 14, 24 (1976) (citation omitted). Moreover, we give great deference to an agency's "interpretation and implementation of its rules enforcing the statutes for which it is responsible." In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 489 (2004). "Where an agency's expertise is a factor, a court defers to that expertise, particularly in cases involving technical matters within the agency's special competence." In re Adoption of Amends. to Ne., Upper Raritan, Sussex Cty., 435 N.J. Super. 571, 583 (App. Div. 2014).

A-3977-19

Petitioner contends that N.J.A.C. 14:3-4.6(d) forbids respondent from retroactively adjusting petitioner's charges for electric service. Petitioner argues that the meter "registered less than 100 percent of the service provided" because the meter constant is a component of the meter, which, if not correctly calibrated, can skew the meter reading. Petitioner further contends that the purpose of the regulation is to "shield[] the customer from retroactive re-billing where the customer did nothing to contribute to the billing error."

Respondent argues that N.J.A.C. 14:3-4.6(d) does not apply because the meter did not register less than 100 percent of the service provided. Respondent notes that the meter was tested and found to be "garnering accurate readings within the required accuracy parameters set by the Board." Respondent further notes that the meter constant "has nothing to do with the meter's functionality." Rather, it is a number used to calculate electric usage in the billing process.

N.J.A.C. 14:3-4.6(d) provides:

> (d)  If a meter is found to be registering less than 100 percent of the service provided, the utility shall not adjust the charges retrospectively or require the customer to repay the amount undercharged, except if:
>
>     1.  The meter was tampered with, or other theft of the utility service has been proven;
>
>     2.  The meter failed to register at all; or

3. The circumstances are such that the customer should reasonably have known that the bill did not reflect the actual usage.

[N.J.A.C. 14:3-4.6(d).]

The traditional rules of statutory interpretation apply when interpreting a regulation. See J.H. v. R & M Tagliareni, LLC, 239 N.J. 198, 214 (2019). "[A] regulation should be construed in accordance with the plain meaning of its language and in a manner that makes sense when read in the context of the entire regulation." Ibid. (quoting Medford Convalescent & Nursing Ctr. v. Div. of Med. Assistance & Health Servs., 218 N.J. Super. 1, 5 (App. Div. 1985)).

In interpreting a statute, the court first looks to the language of the statute. State v. Butler, 89 N.J. 220, 226 (1982). "If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." Ibid. The court does not add terms which may have been intentionally omitted by the legislature, nor does the court "speculate or otherwise engage in an interpretation which would avoid [the statute's] plain meaning." Sterling Laurel Realty, LLC v. Laurel Gardens Co-Op, Inc., 444 N.J. Super. 470, 476 (App. Div. 2016).

The plain language of N.J.A.C. 14:3-4.6(d) reveals that it applies where "a meter is found to be registering less than 100 percent of the service provided

. . . ." Here, the meter was not inaccurate. The meter measured all service respondent provided. Respondent merely used the incorrect meter constant in calculating petitioner's electric bill, resulting in the under-billing at issue.

We next consider whether the Board erred in concluding that respondent Section 3.06 permitted respondent to make the billing adjustment. Respondent contends that Section 3.06 is broader than N.J.A.C. 14:3-4.6(d) because it allows a billing adjustment brought "for any other legitimate reason" instead of requiring an inaccurate meter. We agree.

Prior to offering utility services to the public, each public utility must submit a tariff to the Board for approval. N.J.A.C. 14:3-1.3(a); see also N.J.A.C. 48:2-21. "A tariff is a published schedule of rates, filed by a public utility, and thereafter, in the absence of successful challenge, applicable equally to all customers." Saddle River, 71 N.J. at 29. "[A] tariff is not a mere contract. It is the law, and its provisions are binding on a customer whether he knows of them or not." Ibid.

Section 3.06 of respondent's tariff provides:

> Billing Adjustments**:** An adjustment of charges due to the Company for Services provided by the Company will be made when a meter fails to register within the limits of accuracy prescribed by the [Board of Public Utilities] in accordance with [N.J.A.C.] 14:3-4.6, or for any other legitimate reason, in which case such

adjustment shall not be for a period of more than six years prior to the time the reason of the adjustment became known to the Company.

Here, the ALJ and the Board both found that respondent sought to make the billing adjustment for a legitimate reason – to apply the correct meter constant. The Board promulgated subchapter four to ensure that "metered customers will pay for what they receive and utilities will be compensated for what they provide." 28 N.J.R. 1810(a) (April 1, 1996). Bearing in mind the deference given to the Board's "interpretation and implementation of its rules enforcing the statutes for which it is responsible," Freshwater Wetlands, 180 N.J. at 489, we conclude the Board reasonably found that Section 3.06 allowed respondent to make the challenged billing adjustment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3977-19