NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0341-15T2

IN THE MATTER OF PAUL WILLIAMS,
TOWNSHIP OF LAKEWOOD

_____

APPROVED FOR PUBLICATION

January 25, 2016

APPELLATE DIVISION

Submitted January 13, 2016 — Decided January 25, 2016

Before Judges Ostrer, Haas and Manahan.

On appeal from the New Jersey Civil Service Commission, Docket No. 2014-1750.

Mets Schiro & McGovern, LLP, attorneys for appellant Paul Williams (Kevin P. McGovern, of counsel and on the briefs; David M. Bander, on the briefs).

Secare & Hensel, attorneys for respondent Township of Lakewood (Steven Secare, on the brief).

John J. Hoffman, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

The opinion of the court was delivered by

HAAS, J.A.D.

In this case of first impression in New Jersey, appellant Paul Williams appeals, by leave granted, from the March 5, 2015 administrative decision of the Civil Service Commission (the

Commission) finding him guilty of insubordination for refusing to comply with his employer's demand that he undergo a psychological fitness-for-duty examination. Because we conclude that the employer's order was not reasonably justified under the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101-12213, we reverse and remand for further proceedings.

I.

We derive the following facts from the testimony and documents presented at the hearing conducted in the Office of Administrative Law (OAL). On November 3, 2004, appellant began working as a truck driver for the Department of Public Works (the DPW) of the Township of Lakewood (the Township).

On or about March 28, 2013, the Township manager received an anonymous letter purportedly from a "[v]ery concerned employee at Lakewood Public Works." The unsigned letter stated:

> I am writing this letter because I am very concerned about the mental well[-]being of [appellant]. We as co-workers dread being assigned with him and everyone knows he has some sort of mental issues and I truly feel it puts us all at risk with his tirades and outbursts on a daily basis like the one he had today with his union stewards [M.C., B.T., and P.R.] as well. The men and women here at Lakewood public works deserve to come to work and not be afraid of this man, we deserve a hostile free working environment and you as our employer are legally obligated to provide us such. For years we have complained about this man to former Director [J.F.], to our current administration in

place now and it seems like a joke, it[']s not. In 1992 there were over 750 workplace killings and this is no laughing matter[;] it's very real and very serious. [Appellant] is a time bomb waiting to explode and he needs help, and it's your responsibility to ensure he gets it or provide some way for us to feel safe at work. I truly hope there is something you can do to ensure our safety, please don't put the township['s] fear of liability ahead of the employee's safety.

Thank you for your time[.]

For over eight months, the Township took no action concerning the letter. On December 2, 2013, however, "the Township advised appellant that he would be sent for a psychological fitness-for-duty examination, and that if he did not attend such an examination he would face disciplinary action." Eight days later, the DPW director sent a letter to appellant notifying him that an examination had been scheduled for December 16, 2013, with "a follow-up meeting" set for December 20, 2013. The letter warned appellant that the Township would discipline him if he did not attend both appointments.

Appellant alleged that the examinations were not "job-related and consistent with business necessity" under 42 U.S.C.A. § 12112(d)(4)(A) and, therefore, the Township could not demand that he undergo them. Therefore, appellant did not attend either evaluation.

On December 18, 2013, the Township served appellant with a Preliminary Notice of Disciplinary Action seeking to remove him from employment on charges of incompetency; inefficiency or failure to perform duties; inability to perform duties; conduct unbecoming a public employee; and "other sufficient cause" for discipline. The specification for the charges stated that appellant "failed to report for [the psychological fitness-for-duty] examination contrary to a direct instruction from [his] supervisors."

That same day, appellant requested a departmental hearing, which was held on January 6, 2014. The Township rejected appellant's contention that its demands were not permissible under the ADA and issued a Final Notice of Disciplinary Action terminating appellant's employment. Appellant appealed to the Commission, which transmitted the matter to the OAL for a contested case hearing.

At the OAL hearing, the Township presented the testimony of one witness, the DPW director, who testified that he had worked for the Township for thirty-two years and was familiar with appellant's work. The director stated that we "had problems with [appellant] over the past years" because he was "at times . . . confrontational, and at other times [he walked] away from someone who wished to speak with him." The director testified that he

was not afraid of appellant.  Other than "writing up" appellant "for not helping a fellow worker" on an unspecified date, the director did not identify any prior, formal disciplinary action taken against appellant.  When asked to describe appellant "as a worker[,]" the director stated that he was "no different than any other employee[.]"

The director testified that the Township manager showed him the anonymous letter "[r]ight after he received it."  The director did not investigate the allegations contained in the letter, and he was not sure what action, if any, the manager took concerning it.  The director stated that appellant's "job performance was not a basis for [the Township] sending him to a psychological evaluation."  The Township also stipulated that it had "never sent anyone for a psychological [examination] predicated upon the fact that they failed to help" other employees.

Appellant's union representative briefly testified on his behalf.  The representative stated that the Township manager showed him the anonymous letter "shortly after it was received . . . ."  The manager said that he thought "he need[ed] to act on" the letter.  The representative questioned whether the manager had "'a legal basis to act on it,'" and that was "the

last" the representative "heard of" the letter until the Township filed charges against appellant over eight months later.

In a thorough Initial Decision, the Administrative Law Judge (ALJ) reversed the Township's decision to remove appellant. The ALJ found that there was "no documentary or testimonial evidence of an investigation by the Township of the anonymous letter to determine the veracity of the allegations contained therein." Based upon the director's uncontradicted testimony, the ALJ also found that the Township's demand that appellant "attend a psychological fitness-for-duty examination was not related to his work performance or to any specific allegation of psychologically[-]disruptive behavior."[1] The ALJ also noted that appellant's "work performance was satisfactory."

Under these circumstances, and relying upon 42 U.S.C.A. § 12112(d)(4)(A), the ALJ concluded that the Township's demand that appellant undergo a psychological examination was not "reasonably related" to his job duties and was not "consistent with business necessity." The ALJ stated:

> Here, there was no evidence of a risk of injury to a fellow employee or the public, and no evidence or allegation of physical

---

[1] As we will discuss below, even if the anonymous letter did present a "specific allegation of psychologically[-]disruptive behavior[,]" the allegation was not based upon reliable information provided by a credible third party as required by 42 U.S.C.A. § 12112(d)(4)(A).

contact with another employee. The evidence offered by the [Township] is an anonymous letter that the Township took eight months to act on. There is no showing of an investigation into the anonymous letter. [The DPW director] credibly testified that appellant may be confrontational at times; however, this observation regarding appellant was not the asserted basis for the Township's request for a psychological fitness-for-duty examination of [appellant].

[Appellant] did fail to attend the psychological fitness-for-duty examination, but without a reasonable basis for the request that he undergo the examination, the Township cannot punish him for failure to attend. Such an examination was not job-related and consistent with business necessity.

Because the Township "failed to meet its burden to prove by a preponderance of the evidence that [appellant] committed the charged violations[,]" the ALJ ordered that he be immediately reinstated to his truck driver position with back pay from the date of his termination to the date of his reinstatement. The ALJ also granted appellant "reasonable counsel fees."

The Township filed exceptions and, on March 5, 2015, the Commission reversed the ALJ's determination. In its decision, the Commission failed to address appellant's contention that the Township's demand that he undergo a psychological examination was impermissible under the ADA. Indeed, the Commission did not even cite the ADA in its decision.

The Commission found that appellant was insubordinate because he "fail[ed] to perform his duty by disregarding his superiors' orders to appear for the fitness-for-duty examinations." Although the Township had not charged appellant with insubordination, the Commission reasoned that the specifications for the charges set forth in the Preliminary and Final Notices of Disciplinary Action "clearly subsumed allegations of insubordination."

The Commission determined that appellant should not be removed from employment, and instead imposed a six-month suspension. The Commission explained that "appellant's blatant disregard of oral and written orders from his superiors is significantly egregious to warrant a substantial penalty."

The Commission also ordered appellant to undergo a psychological examination before he was reinstated to ensure that he was "fully capable of performing the duties of his position." If the psychologist determined that "appellant [was] fit for duty, without qualification," the Commission directed the Township to immediately reinstate appellant. However, if the psychologist determined that appellant was "unfit for duty," the Commission ordered the Township to charge appellant "with inability to perform duties" and remove him from employment, subject to appellant's right to appeal such a determination to

the Commission. The Commission also denied appellant's request for counsel fees. This appeal followed.[2]

## II.

Established precedents guide our task on appeal. Our scope of review of an administrative agency's final determination is limited. In re Herrmann, 192 N.J. 19, 27 (2007). "'[A] strong presumption of reasonableness attaches'" to the Commission's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div.) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1999)), certif. denied, 170 N.J. 85 (2001). The burden is upon the appellant to demonstrate grounds for reversal. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002); see also Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993) (holding that "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious rests upon the appellant"), certif. denied, 135 N.J. 469 (1994).

To that end, we will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was

---

[2] Appellant initially filed a notice of appeal, which we dismissed on our own motion because it was interlocutory. We thereafter granted appellant's motion for leave to appeal the Commission's March 5, 2015 decision.

arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Application of Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008) (citing Herrmann, supra, 192 N.J. at 28); see also Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9-10 (2009). We are not, however, in any way "bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

Moreover, if our review of the record satisfies us that the agency's finding is clearly mistaken or erroneous, the decision is not entitled to judicial deference and must be set aside. L.M. v. State of N.J., Div. of Med. Assistance & Health Servs., 140 N.J. 480, 490 (1995). We may not simply "rubber stamp" an agency's decision. In re Taylor, 158 N.J. 644, 657 (1999).

On appeal, appellant contends that, under the ADA, "the Township lacked the lawful authority" to order him to undergo a psychological fitness-for-duty examination. We agree.

The ADA "provide[s] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C.A. § 12101(b)(1). In enacting the ADA, Congress found that "discrimination against individuals with disabilities persists in such critical areas as employment,"

42 U.S.C.A. § 12101(a)(3), and therefore sought to "assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[.]" 42 U.S.C.A. § 12101(a)(7).

Regarding employment discrimination, 42 U.S.C.A. § 12112(a) sets forth the "general rule" that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to [the] . . . discharge of employees[.]" 42 U.S.C.A. § 12112(d)(1) states that this "prohibition against discrimination as referred to in [42 U.S.C.A. § 12112(a)] shall include medical examinations and inquiries." 42 U.S.C.A. § 12112(d)(4)(A) prohibits employers, like the Township, from "requir[ing] a medical examination" or "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability . . . unless such examination or inquiry is shown to be job-related and consistent with business necessity."

"There is very little discussion of [42 U.S.C.A.] § 12112(d)(4)(A) in the ADA's legislative history." Kroll v White Lake Ambulance Auth., 691 F.3d 809, 815 n.8 (6th Cir. 2012). However, the Equal Employment Opportunity Commission's regulations make clear that an employer cannot require an employee to undergo medical tests that do not serve a legitimate business purpose. See 29 C.F.R. § 1630.13(b) (stating the

11

general rule that, except as permitted by 29 C.F.R. § 1630.14, "it is unlawful for a covered entity to require a medical examination of an employee"); 29 C.F.R. § 1630.14(c) (stating that a medical examination may only be conducted if it is "job-related and consistent with business necessity"). Courts give "'substantial deference'" to the EEOC's regulations interpreting the ADA, including 42 U.S.C.A. § 12112(d). Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 515 n.8 (3d Cir. 2001) (quoting Chevron. Deane v. Pocono Med. Ctr., 142 F.3d 138, 143 n.4 (3d Cir. 1998) (en banc)).

In addition, the EEOC has issued interpretive guidelines to provide employers with detailed guidance on when they may lawfully require an employee to undergo a medical examination. Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA), THE U.S. EQUAL EMP'T OPPORTUNITY COMM'N [hereinafter Enforcement Guidance or Guidance], http://www.eeoc.gov/policy/docs/guidance-inquiries.html (last visited Jan. 19, 2016). We have long recognized that deference "should be afforded to the interpretation of the agency charged with applying and enforcing a statutory scheme." Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301 (2015). Thus, while not binding, "[t]he EEOC's interpretative guidelines . . . 'constitute a body of experience

and informed judgment to which courts and litigants may properly resort for guidance.'" Duda v. Bd. of Educ., 133 F.3d 1054, 1060, n.12 (7th Cir. 1998) (quoting Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65, 106 S. Ct. 2399, 2404, 91 L. Ed. 2d 49, 58 (1986)).

In its Guidance, the EEOC explained that, prior to the enactment of the ADA, "many employers asked . . . employees to provide information concerning their physical and/or mental condition. This information often was used to exclude and otherwise discriminate against individuals with disabilities -- particularly nonvisible disabilities, such as mental illness -- despite their ability to perform the job." Enforcement Guidance, supra. Thus, "[t]he ADA's provisions concerning . . . mental examinations reflect Congress's intent to protect the rights of . . . employees to be assessed on merit alone, while protecting the rights of employers to ensure that individuals in the workplace can efficiently perform the essential functions of their jobs." Ibid.

Psychological fitness-for-duty examinations are "medical examinations" under the ADA. Enforcement Guidance, supra. Thus, the examinations that the Township ordered appellant to undergo would only have been lawful if they were "job-related and consistent with business necessity." 42 U.S.C.A. § 12112(d)(4)(A).

The Guidance defines these terms and "addresses situations in which an employer would meet the general standard for . . . requiring a medical examination."  We therefore quote from the Guidance at length.

The EEOC has defined the "job-related and consistent with business necessity" set forth in 42 U.S.C.A. § 12112(d)(4)(A) as follows:

> Generally, a disability-related inquiry or medical examination of an employee may be "job-related and consistent with business necessity" when an employer "has a reasonable belief, based on objective evidence, that: (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat due to a medical condition."
>
> [Enforcement Guidance, supra (footnotes omitted).]

Pursuant to 29 C.F.R. § 1630.2(r), the term "[d]irect threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation."[3]  The EEOC has further explained:

> Sometimes this standard may be met when an employer knows about a particular employee's medical condition, has observed performance

_____

[3] Although not specified in the regulation, we discern no reason why the term "direct threat" would not also include a significant risk that the individual would harm property.

A-0341-15T2

problems, and reasonably can attribute the problems to the medical condition. An employer also may be given <u>reliable information</u> by a <u>credible third party</u> that an employee has a medical condition, or the employer may observe symptoms indicating that an employee may have a medical condition that will impair his/her ability to perform essential job functions or will pose a direct threat. In these situations, it may be job-related and consistent with business necessity for an employer to make disability-related inquiries or require a medical examination.

[<u>Enforcement Guidance</u>, <u>supra</u> (footnotes omitted) (emphasis added).]

In other words, the employer must reasonably believe, either through direct observation or through reliable information received from credible sources, that the employee's perceived medical condition is affecting his or her work performance or that the employee poses a direct threat. Then, and only then, may the employer lawfully require the employee to undergo a psychological fitness-for-duty examination. <u>See</u> <u>Yin v. California</u>, 95 <u>F.</u>3d 864, 868 (9th Cir. 1996) (observing that an employer cannot require an employee to undergo a medical examination unless the employee's "problems have had a substantial and injurious impact on [the] employee's job performance"), <u>certif. denied</u>, 519 <u>U.S.</u> 1114, 117 <u>S. Ct.</u> 955, 136 <u>L. Ed.</u> 2d 842 (1997).

The Enforcement Guidance cautions employers that they may not

> require a medical examination of an employee based, in whole or in part, on information learned from another person[, unless] the information learned is reliable and would give rise to a reasonable belief that the employee's ability to perform essential job functions will be impaired by a medical condition or that s/he will pose a direct threat due to a medical condition[.]
>
> [(emphasis omitted).]

In determining whether the information provided by a credible third-party is sufficiently reliable to support an order requiring the employee to submit to a psychological examination, the Guidance states that the employer should consider the following factors:

> (1) the relationship of the person providing the information to the employee about whom it is being provided; (2) the seriousness of the medical condition at issue; (3) the possible motivation of the person providing the information; (4) how the person learned the information (e.g., directly from the employee whose medical condition is in question or from someone else); and (5) other evidence that the employer has that bears on the reliability of the information provided.
>
> [Enforcement Guidance, supra.]

To illustrate these requirements, the EEOC provided the following example, which is particularly pertinent to the case at hand:

Example[]: Kim works for a small computer consulting firm. When her mother died suddenly, she asked her employer for three weeks off, in addition to the five days that the company customarily provides in the event of the death of a parent or spouse, to deal with family matters. During her extended absence, a rumor circulated among some employees that Kim had been given additional time off to be treated for depression. Shortly after Kim's return to work, Dave, who works on the same team with Kim, approached his manager to say that he had heard that some workers were concerned about their safety. According to Dave, people in the office claimed that Kim was talking to herself and threatening to harm them. Dave said that he had not observed the strange behavior himself but was not surprised to hear about it given Kim's alleged recent treatment for depression. Dave's manager sees Kim every day and never has observed this kind of behavior. In addition, none of the co-workers to whom the manager spoke confirmed Dave's statements.

[(emphasis omitted).]

Based upon the facts of this hypothetical example, the EEOC advised that

the employer does not have a reasonable belief, based on objective evidence, that Kim's ability to perform essential functions will be impaired or that s/he will pose a direct threat because of a medical condition. The employer, therefore, would not be justified in asking Kim disability-related questions or requiring her to submit to a medical examination because the information provided by Dave is not reliable.

[Enforcement Guidance, supra.]

17

After carefully reviewing 42 U.S.C.A. § 12112(d)(4)(A) and the EEOC's regulations and its Guidance, and distilling them to their essence, we conclude that an employer may only require an employee to undergo a psychological fitness-for-duty examination when the employer has a reasonable belief, either through direct observation or through reliable information from credible sources, that the employee's perceived mental state will either affect his or her ability to perform essential job functions or that the employee poses a direct threat. As the EEOC has observed, the employer's "reasonable belief . . . must be based on objective evidence obtained, or reasonably available to the employer, prior to . . . requiring a medical examination. Such a belief requires an assessment of the employee and his/her position and cannot be based on general assumptions." Enforcement Guidance, supra.

## III.

Applying these principles to the facts of this case, we hold that the Township violated 42 U.S.C.A. § 12112(d)(4)(A) when it ordered appellant to participate in a psychological fitness-for-duty examination based upon the information contained in the anonymous letter. Simply stated, the Township did not meet its burden of demonstrating that its directive was "job-related and consistent with business necessity."

Here, the DPW director testified that appellant's work performance was satisfactory and "was not a basis" for the Township's demand that he undergo the evaluation. While appellant was "confrontational" at times, the director stated that appellant was "no different than" other employees. Under these circumstances, we are satisfied that the Township failed to demonstrate that appellant's ability to perform his job functions was impaired by any suspected medical or mental condition.

The Township also failed to prove that appellant posed a direct threat to either himself, others or property. Again, the Township did not present any evidence that appellant had threatened other employees. The DPW director only mentioned one specific incident in appellant's nine years of employment where appellant was disciplined for not helping a co-worker. However, the Township stipulated that other employees were similarly disciplined over the years, but none of them were ordered to undergo psychological evaluations. The Township did not present any documentary evidence concerning any other disciplinary actions involving appellant.

In addition, the Township obviously did not consider appellant to be a direct threat to other employees or property because, after it received the anonymous letter, it failed to take any action concerning it for over eight months. During that

entire time, appellant performed the duties of his position without incident.

Turning to the anonymous letter, it is clear that, even though the letter made allegations of disruptive behavior, it did not represent the type of reliable information from a credible source upon which the Township could reasonably rely in ordering a psychological examination. The identity of the "[v]ery concerned employee at Lakewood Public Works" who sent the letter was unknown. Therefore, the information in the letter was exactly the type of innuendo and rumor that the EEOC has advised employers is insufficient to support a mandatory evaluation.

Contrary to the Township's contention, it was not powerless to take appropriate action after it received the anonymous letter. 42 U.S.C.A. § 12112(d)(4)(B) plainly provides that an employer "may make inquiries into the ability of an employee to perform job-related functions." Thus, the Township could have solicited information from the DPW director and any other supervisors concerning appellant's job performance. The Township also could have contacted the three "union stewards" specifically named in the anonymous letter for information about the alleged "outburst" appellant had on March 28, 2013. Instead, the Township failed to investigate the allegations in the anonymous letter for over eight months and then sought to rely upon that

letter as the sole basis for its order requiring appellant to submit to the psychological evaluation. Thus, this order clearly violated 42 U.S.C.A. § 12112(d)(4)(A). Accordingly, the Commission's finding of insubordination,[4] given the undisputed circumstances presented, was erroneous as a matter of law.

Therefore, we conclude that the Commission's decision is arbitrary, capricious, and unreasonable and, accordingly, we reverse and vacate the penalty imposed. We remand to the Commission for a calculation of back pay due to appellant upon his reinstatement to his former position and for consideration of his request for counsel fees. In remanding, we express no view on the merits of appellant's application for counsel fees or the amount that may be due him in back pay.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Neither the Civil Service Act, N.J.S.A. 11A:1-1 to -12-6, nor the applicable regulation, N.J.A.C. 4A:2-2.3(a)(2), define "insubordination." However, we have observed that it is ordinarily defined as a failure to obey a lawful order. See Rivell v. Civil Serv. Comm'n, 115 N.J. Super. 64, 71 (App. Div. 1971), certif. denied, 59 N.J. 269 (1971).

A-0341-15T2