NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5138-13T3

IN THE MATTER OF
JOSEPH INVERSO,
STATE PAROLE BOARD
___________________________

 Argued December 20, 2016 – Decided April 11, 2017

 Before Judges Ostrer and Leone.

 On appeal from the New Jersey Civil Service
 Commission, Docket No. 2014-1210.

 Melvin M. Wright, Jr., argued the cause for
 appellant Joseph Inverso.

 Pamela N. Ullman, Deputy Attorney General,
 argued the cause for respondent New Jersey
 Civil Service Commission (Christopher S.
 Porrino, Attorney General, attorney; Melissa
 H. Raksa, Assistant Attorney General, of
 counsel; Todd A. Wigder, Deputy Attorney
 General, on the brief).

PER CURIAM

 Joseph Inverso appeals from the Civil Service Commission's

April 29, 2014 final decision, denying his request for relief from

the September 26, 2013 decision terminating him from a provisional

appointment with the New Jersey State Parole Board. We affirm.
 After holding other positions with the Board, Inverso was

promoted to the Hearing Officer II title in February 2000. Three

years later, he was demoted and provisionally appointed to the

position of Senior Management Assistant. The demotion followed

the Personnel Department's1 determination that Inverso did not

satisfy the Hearing Officer II position's college degree

educational requirement.2 Two other hearing officers were demoted

for the same reason at that time, but five similarly unqualified

officers were allowed to retain their title because they held the

job over ten years. In a memorandum dated August 18, 2003, the

Board's executive director informed Inverso that he qualified for

the Senior Management Assistant title, but his appointment would

be "pending open competitive examination."

 Inverso's union filed a grievance with the Board on behalf

of the three demoted officers, contending it acted arbitrarily in

1 Effective June 30, 2008, the Commission assumed the
responsibilities of the former Department of Personnel. See
Silviera-Francisco v. Bd. of Educ. of Elizabeth, 224 N.J. 126, 138
n.5 (2016).

2 The "college graduate" box was checked off on the form the Board
originally submitted to the Personnel Department in 2000, which
sought approval of Inverso's appointment to the Hearing Officer
II position. In an August 23, 2013 letter to the Commission,
which we discuss below, the Board's chairman at the time, James
T. Plousis, stated that Inverso had earned a county college
associate's degree, but he did not say when it was earned. In any
event, apparently a bachelor's degree was required.

 2 A-5138-13T3
demoting some, but grandfathering other hearing officers. On July

19, 2004, the union, the Board and the three former hearing

officers — including Inverso — entered into a settlement

agreement.3 It stated that Inverso, "who has the necessary

experience to hold the title of Hearing Officer II[,] will remain

in the classified service title of Senior Management Assistant.

This action will be backdated to September 6, 2003."

 In an apparent reference to the educational requirements of

the Hearing Officer II title, the agreement stated, "Upon

completion of the degree requirement the grievants shall be

considered for promotion to the title of Hearing Officer II at the

New Jersey State Parole Board."

 Another paragraph pertaining to education was stricken by

line-throughs and accompanied by a handwritten annotation, "Not

Required." The modification was also initialed in the margin.

Inverso argues the initials were inscribed by a Commission

representative, Arthur Finkel.4 The stricken paragraph states,

"The grievants shall be given five (5) years to complete the

educational requirement of a bachelor's degree from an accredited

3 The parties signed the agreement on various dates, the latest
being July 19, 2004.

4 The initials are difficult to discern and could easily be read
as "AJC." Inverso's argument that Finkel initialed the document
is unsupported by a certification or any other competent evidence.

 3 A-5138-13T3
college or university. The five (5) year window shall commence

on the date that this agreement is signed by all parties."

 The agreement added that if the grievants were reinstated to

the Hearing Officer II title, all their prior service in the title

would be "bridged" in calculating seniority for layoff purposes.

The only signatories of the agreement were the three grievants,

their union representative, and the Board's employee relations and

training administrator, Hank Fichter. The agreement stated that

"[a]uthorization has been given by the New Jersey State Parole

Board to agree to this settlement." Notwithstanding the initials

attributed to Finkel, the Commission was not a stated party to the

agreement, nor did a Commission representative sign the agreement.5

 Inverso still held the Senior Management Assistant title in

September 2007, when the Commission informed the Board that Inverso

was required to test for the Senior Management Assistant title and

5 In his August 23, 2013 letter, Plousis contended, based on Board
records, that Fichter, the Board's representative, had sent a
draft of the agreement to the Personnel Department. Based on
Plousis's interpretation of a post-it note in Fichter's
handwriting — which is not in the record — Plousis alleged that
Finkel provided "verbal input" into the agreement. Plousis also
noted that the fax routing slip to the Commission stated that one
Bill Johnson, who worked at the Office of Employee Relations within
the Governor's Office, "finalized" the agreement. We may take
notice that Plousis was the U.S. Marshal of New Jersey when the
agreement was negotiated and therefore had no personal involvement
in it. See History of District of New Jersey (March 28, 2017),
https://www.usmarshals.gov/district/nj/general/history.htm.

 4 A-5138-13T3
meet its college degree requirement.6 Inverso apparently failed

to do so. Accordingly, when the Commission certified an open

competitive list for the position in September 2010, it omitted

Inverso. As a result, the Commissioner then instructed the Board

to lay off Inverso.

 According to Plousis, Inverso "[was] unaware that [he] had

to monitor the CSC's website to apply for the examination . . . ."7

Inverso appealed the Commission's instruction and was permitted

to file for and take the next test. But he did not pass, and his

name did not appear on the next eligible list promulgated on April

18, 2013, expiring April 17, 2016.8 The Board was again instructed

to lay off Inverso.

 In his August 2013 letter, Plousis asked the Commission to

permit the Board either to retain Inverso in his position as Senior

Management Assistant or place him in an unclassified position.

6 The Commission's directive is not included in the record. We
rely in part on Plousis's recitation of the background of the case
in his August 2013 letter.

7 Plousis's statement is unsupported by a certification from
Inverso.

8 Initially, Inverso was not permitted to take a make-up
examination because he was found by the Division of State and
Local Operations (SLO) to be performing the duties of a Technical
Assistant 3 instead of Senior Management Assistant. Approximately
six weeks later, SLO reversed its conclusion and found he did
perform Senior Management Assistant duties.

 5 A-5138-13T3
Plousis referred to Inverso's experience and demonstrated fitness,

his almost fifteen years of valuable and unblemished service, his

attainment of a county college associate's degree, and notions of

fundamental fairness.

 The Commission reportedly responded to Plousis's request on

September 25, 2013.9 As described in the Commission's 2014

decision, the letter rejected the Board's request to grandfather

Inverso in the Senior Management Assistant title. But the

Commission permitted the Board to move him into an unclassified

position if the Board had one available and Inverso were "assigned

duties commensurate with the unclassified title." The Commission

rejected grandfathering Inverso because the Board itself had

previously requested permission to eliminate the title as it was

"no longer needed due to a restructuring of job duties and workflow

9 Neither party included the letter in the record. Furthermore,
although the Commission refers to it at length in the decision on
appeal, the Commission inexplicably omitted it from its Statement
of Items Comprising the Record. See R. 2:5-4 ("Within 30 days of
the service upon it of the notice of appeal the agency or officer
from which the appeal is taken shall file in the appellate court
a statement of the items comprising the record on appeal and shall
serve a copy thereof on each party to the appeal."). We remind
agencies of the importance of complying with the Rule, which is
designed "[t]o ensure that the parties and the appellate court
have a complete understanding of the record at the administrative
level." Jeffrey S. Mandel, New Jersey Appellate Practice, § 22:1-
2(e) at 445 (2016).

 6 A-5138-13T3
procedures."10 Also, the Board had requested reclassification of

the Senior Management Assistant title, representing to the

Commission that, once reclassified, incumbents in the Senior

Management Assistant title would be terminated.

 On September 26, 2013, the Board informed Inverso that the

Commission had rejected Plousis's "request to grandfather [him]

into [his] current provisional title of Senior Management

Assistant," because "it would not be appropriate." It advised

Inverso that his "position with the NJ State Parole Board [would]

be terminated effective October 11, 2013." The Board's letter to

Inverso did not address Plousis's alternative request for

permission to place Inverso in another unclassified position in

the agency, which the Commission conditionally approved.11

 In October 2013, Inverso's union representative appealed to

the Commission the termination and refusal to grandfather him in

the Senior Management Assistant position. The representative

contended the termination violated the July 19, 2004 settlement

10 The Commission stated that it issued a decision November 7,
2013, approving the Board's request, entitled In the Matter of
Senior Management Assistant (S0562P), Statewide, CSC 2014-445,
Final Decision (November 7, 2013).

11Notably, by this time, Plousis had been succeeded by Yolette C.
Ross as the Board's chair.

 7 A-5138-13T3
agreement. He also asked that Inverso be placed in another

position with the Board.

 In its April 29, 2014 final decision, the Commission denied

Inverso's appeal. The Commission found that Inverso's reliance

on the settlement agreement was misplaced, stating the agreement

was neither "presented to nor acknowledged by the Commission."

Further, the Commission held that it had "no role" in the

agreement's creation, notwithstanding "the claim that agency staff

members were involved." Consequently, the Commission was not

bound by it.

 The Commission determined that since Inverso undisputedly and

knowingly held a provisional title, he lacked a property interest

in the title and could be removed at will. The Commission found

insufficient grounds to waive the testing requirement and

"grandfather" him into the Senior Management Assistant title

because the testing requirement was an integral aspect of the

"process of selection and appointment." Also, the Commission

noted he failed to pass the exam yet held the position for many

years.

 This appeal followed. Inverso contends the Commission should

be "equitably estopped from reclassifying" his Senior Management

Assistant position because he detrimentally relied on the July 19,

2004 settlement agreement. He also contends the decision not to

 8 A-5138-13T3
grandfather him as a hearing officer, while grandfathering five

others in 2003, was arbitrary and capricious and violated his

rights to equal protection. As a result, he argues he should be

placed in the hearing officer position. We reject these arguments.

 We exercise a limited scope of review. In re Williams, 443

N.J. Super. 532, 540 (App. Div. 2016). "[A] strong presumption

of reasonableness attaches to the Commission's decision," and

appellant bears the burden to justify reversal. Id. at 540-41

(internal quotation marks and citations omitted). "To that end,

we will 'not disturb an administrative agency's determinations or

findings unless there is a clear showing that (1) the agency did

not follow the law; (2) the decision was arbitrary, capricious,

or unreasonable; or (3) the decision was not supported by

substantial evidence.'" Id. at 541 (quoting In re Application of

Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194

N.J. 413, 422 (2008)). On the other hand, we are not bound by the

agency's legal determinations, including its statutory

interpretation, Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85,

93 (1973), and we will not merely "rubber stamp an agency's

decision." Williams, supra, 443 N.J. Super. at 541 (internal

quotation marks and citation omitted).

 We are also guided by a fundamental principle: "The Civil

Service Act . . . carries out the New Jersey constitutional purpose

 9 A-5138-13T3
that public service positions be filled according to individual

merit and fitness, demonstrated as far as practicable through a

competitive examination process." In re Tavani, 264 N.J. Super.

154, 159-60 (App. Div. 1993) (citing N.J. Const. art. VII, § I, ¶

2). The Act itself and its implementing regulations expressly

promote this aim. See N.J.S.A. 11A:1-2(a) (noting the Act is

intended to "select and advance employees on the basis of their

relative knowledge, skills and abilities"); N.J.S.A. 11A:4-1

(authorizing development of competitive examinations); N.J.A.C.

4A:4-2.2(a) (directing Commissioner to administer examinations for

certain positions). Statutory provisions that grandfather

employees and exempt them from examinations are at odds with this

fundamental goal, and should be "construed restrictively."

Tavani, supra, 264 N.J. Super. at 160. The same strict

construction should apply to an agreement that poses a similar

threat to statutory and constitutional goals of a competitive

civil service.

 A civil service employer makes regular appointments from

lists of eligible candidates that the Commission establishes after

examinations. See In re Foglio, 207 N.J. 38, 44 (2011). By

contrast, provisional appointments may be made when there is no

certified list from which to fill a vacancy. In re Chief Clerk,

282 N.J. Super. 530, 533-34 (App. Div.) (stating "a provisional

 10 A-5138-13T3
appointee holds his or her 'employment in the competitive division

of the career service pending the appointment of a person from an

eligible list'" (quoting N.J.S.A. 4A:1-1.3)), certif. denied, 142

N.J. 573 (1995). A provisional appointee may be terminated at any

time and has no right to appeal to the Commission. O'Malley v.

Dep't of Energy, 109 N.J. 309, 314 (1987).

 Inverso contends the 2004 agreement granted him a permanent

appointment to the Senior Management Assistant title. Moreover,

he argues the Commission should be equitably estopped from

repudiating it because its employee, Arthur Finkel, allegedly was

involved in its drafting. Yet he has presented insufficient

evidence to bind the Commission to its terms or estop it from

refusing to honor them.

 Inverso relies on the provision that acknowledged he "has the

necessary experience to hold the title of Hearing Officer II," but

"will remain in the classified service title of Senior Management

Assistant." He contends this provision granted him a permanent

appointment without having to take the examination. We are

unpersuaded. To the contrary, the plain language, strictly

construed, says nothing about the examination requirement.

 Inverso presents no competent evidence of the agreement's

negotiating history or other extrinsic evidence to support his

interpretation. See Conway v. 287 Corporate Ctr. Assocs., 187

 11 A-5138-13T3
N.J. 259, 268-69 (2006); Newark Publishers' Ass'n v. Newark

Typographical Union, 22 N.J. 419, 427 (1956). In the context of

Inverso's 2003 grievance, which ostensibly sought to undo his

demotion and restore him to the Hearing Officer II title, the

statement that he "will remain in the classified service title of

Senior Management Assistant" apparently meant nothing more than

he would stay put. Especially in light of the executive director's

pre-agreement statement that his demotion to the Senior Management

Assistant was made "pending open competitive examination," the

absence of any explicit statement to the contrary in the agreement

undermines Inverso's interpretation.

 Notably, there is no evidence that when Inverso took the

examination he protested that it violated the terms of the

agreement. His apparent acquiescence also undermines his claim

that the agreement exempted him from the requirement. See Michaels

v. Brookchester, Inc., 26 N.J. 379, 388 (1958) ("Where ambiguity

exists, the subsequent conduct of the parties in the performance

of the agreement may serve to reveal their original

understanding."); see also Restatement (Second) of Contracts §

202(4), comment g (1981) ("The parties to an agreement know best

what they meant, and their action under it is often the strongest

evidence of their meaning.").

 12 A-5138-13T3
 In any event, the Commission was not a party to the settlement

agreement. We reject Inverso's contention that the Commission

should be bound because an employee named Arthur Finkel allegedly

initialed the stricken paragraph about having five years to satisfy

educational requirements, which we presume pertained to the

Hearing Officer II position. There is no competent evidence the

initials belonged to Arthur Finkel. Neither Inverso nor anyone

who claims personal knowledge of the agreement has said he

initialed it. Although Plousis referred to Finkel in his 2013

letter, he lacked personal knowledge of either the settlement

negotiation or Finkel's role therein, if any. Even if Finkel

initialed the striking through of a paragraph, he provided no

written expression of approval of any other provision of the

agreement, particularly the one stating Inverso would remain in

the Senior Management Assistant title. Furthermore, neither he

nor any other Commission representative signed the agreement, and

the Board's signatory did not purport to act on behalf of the

Commission.

 Nor is there evidential support for equitably estopping the

Board from refusing to honor the alleged agreement to exempt

Inverso from the examination requirement. "The essential elements

of equitable estoppel are a knowing and intentional

misrepresentation by the party sought to be estopped under

 13 A-5138-13T3
circumstances in which the misrepresentation would probably induce

reliance, and reliance by the party seeking estoppel to his or her

detriment." O'Malley, supra, 109 N.J. at 317; see also Hirsch v.

Amper Fin. Servs., LLC, 215 N.J. 174, 189 (2013). "In other words,

equitable estoppel . . . requires detrimental reliance." Ibid.

"Equitable estoppel is rarely invoked against a governmental

entity, particularly when estoppel would interfere with essential

government functions." O'Malley, supra, 109 N.J. at 316 (internal

quotation marks and citations omitted). Instead, it is applied

only in the most compelling circumstances, "to prevent manifest

injustice." McDade v. Siazon, 208 N.J. 463, 480 (2011) (internal

quotation marks and citation omitted); O'Malley, supra, 109 N.J.

at 316.

 Inverso provides no certification or other competent evidence

to support his argument that he detrimentally relied on his

subjective understanding that the agreement exempted him from the

examination requirement. As noted, the fact that he sat for the

examination belies this alleged understanding.

 Inverso also places undue weight on his acceptance of the

demotion to Senior Management Assistant. He suggests that his

willingness to do so was based on the Commission's promise to

provide a permanent position. But he did not meet the educational

requirements of the Hearing Officer II position. There were

 14 A-5138-13T3
harsher remedies at the agency's disposal, including termination.

He thus received other consideration for entering the agreement,

including a provisional appointment to the Senior Management

Assistant position and a promise of seniority if he ultimately met

the qualifications for the Hearing Officer II position.

 Also, there is no competent evidence in the record to support

a claim that the Commission knowingly or intentionally

misrepresented Inverso's rights. Even if Arthur Finkel endorsed

a paragraph regarding educational requirements, that falls well

short of proving he or the Commission assured Inverso that he

could retain the Senior Management Assistant title without passing

an examination.

 We reject Inverso's argument that In re Johnson, 215 N.J. 366

(2013) compels application of equitable estoppel here. In that

case, the Supreme Court held the Commission was barred from

reclassifying a twenty-five-year incumbent of an unclassified

prosecutor's agent position as a mere property clerk. The Court

relied both on the Commission's misapprehension of the agent's

duties, id. at 382-84, and the Commission's written assurances

that its announced classification review would affect only recent

hires. Id. at 386-87. By contrast, in this case, the Commission

neither mistook Inverso's duties nor made such explicit

representations.

 15 A-5138-13T3
 Rather, the more apt precedent is O'Malley, where the Court

declined to apply equitable estoppel to enable a provisional

appointee to retain his supervisory position when the Commission

failed to give a timely examination. O'Malley, supra, 109 N.J.

at 316-18. The Court noted the lack of proof of a

misrepresentation by the Commission. Id. at 317. In addition,

the Court stated it was "reluctant to permit employees to retain

by estoppel their provisional appointments." Id. at 318. So are

we in this case.

 Finally, we reject Inverso's argument that he is entitled to

the Hearing Officer II position. It is too late for Inverso to

complain in 2013 that he was treated arbitrarily and unfairly ten

years earlier. See N.J.A.C. 4A:2-1.1(b) (stating appeal must be

filed within twenty days after actual or constructive notice).

Inverso entered into the 2004 settlement agreement resolving that

claim, and leaving him in a different position. In any event, the

disparate treatment of Inverso and the five hearing officers who

were not demoted was not arbitrary, as the five had considerably

more experience in the position at that time.

 Inverso also misplaces reliance on L. 2005, c. 344, § 1,

which moved hearing officers to the classified service, amending

 16 A-5138-13T3
N.J.S.A. 30:4-123.48.12 The new law affected only those persons

who had been employed as hearing officers "at least one year prior

to the effective date" of the amendment. L. 2005, c. 344, § 1;

N.J.S.A. 30:4-123.48(c). Ibid. The effective date was January

12, 2006. Id. at § 2. As Inverso did not meet this requirement,

the statute is of no moment.

 To the extent not addressed, Inverso's remaining arguments

lack sufficient merit to warrant discussion in a written opinion.

R. 2:11-3(e)(1)(E).

 Affirmed.

12Inverso inappropriately raised this argument for the first time
in his reply brief. See Bacon v. N.J. State Dep't of Educ., 443
N.J. Super. 24, 38 (App. Div. 2015), certif. denied, 224 N.J. 281
(2016). We nonetheless choose to address it.

 17 A-5138-13T3