**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3368-17T3

L.A.,

      Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES,

      Respondent-Respondent,

and

MONMOUTH COUNTY BOARD
OF SOCIAL SERVICES,

      Respondent.

_____

Submitted August 28, 2019 – Decided September 4, 2019

Before Judges Alvarez and Gooden Brown.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Fink Rosner Ershow-Levenberg LLC, attorneys for appellant (Lauren S. Marinaro, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

PER CURIAM

On November 21, 2017, the New Jersey Department of Human Services, Division of Medical Assistance and Health Services (DMAHS) issued a final agency decision denying Medicaid benefits through the nursing home Medicaid program to L.A. DMAHS adopted an administrative law judge's (ALJ) initial decision, which affirmed the Monmouth County Board of Social Services (CWA). We reverse.

G.A., L.A.'s husband, and L.A. did not initially provide to CWA copies of a revocable trust document and blank schedules, or even disclose its existence, when applying for benefits. G.A. and L.A. employed a firm, not attorneys, authorized to appear at administrative hearings of this nature, to assist them with the application process. G.A. and L.A. transferred their home into the trust.

Once informed of the existence of the trust, CWA requested verification regarding the trust assets. The attorney who created the trust authored a letter explaining that the parties' home was the only asset ever held in the trust. A

copy of the trust termination document was also provided to CWA. Because trust schedules and appendices were attached but left blank, L.A.'s application was denied for failure to provide the paperwork necessary for an eligibility determination. CWA did not consider the attorney's letter adequately explained the blank schedules. Once denied benefits, L.A. requested a fair hearing, and the matter was transferred to the Office of Administrative Law. N.J.S.A. 52:14B-1 to -15; N.J.S.A. 52:14F-1 to -13.

At the hearing before the ALJ, the attorney who in 2007 prepared the relevant trust document, testified on behalf of L.A. The attorney explained that the only asset transferred into the revocable trust was their home. The couple conveyed the home back into their individual names in 2012. In 2017, on the same date the trust was terminated, they transferred the property into G.A.'s name. When asked why the schedules and appendices attached to the trust instrument[1] were left blank, the attorney stated that those documents called for information regarding transfers not applicable to G.A. and L.A. The documents were intended to record gifts, loans, or charitable distributions—none of which had occurred. He also testified that because the revocable trust is a mirror image of the individual's financial status, any trust income would be reported on the

---

[1] The record suggests the attorney used a pre-printed form as the model.

A-3368-17T3

individual's tax return under the individual's social security number, not in a separate tax filing under the trust's name. When asked to explain the reason he employed an eighty-eight-page form to create the revocable trust, the attorney acknowledged it was one "designed to be functional in [fifty] out of [fifty] states."

The ALJ's conclusion as to the attorney's credibility was unclear. She said he testified credibly "regarding efforts made to complete the verification process." She went on, however, to discount his explanation that a full accounting of petitioner's resources had been provided since not all the requisite verification forms were submitted.

The ALJ found G.A. to be "truthful about his very limited knowledge about his case." He too testified that the only trust asset was the home.

The ALJ concluded L.A. had not submitted "the requested verification to establish eligibility and did not demonstrate that sufficient verification was provided." For that reason, she held CWA's denial of benefits "was appropriate."

In its decision, DMAHS stated that the testimony from L.A.'s attorney and the representative that aided G.A. and L.A. through the application process, did not "prove that all requisite verifications were submitted or are no longer

A-3368-17T3

necessary." DMAHS opined that G.A. did not understand the trust, but acknowledged that counsel testified it was the family's responsibility to keep track of trust assets.

Furthermore, DMAHS discounted the tax return information the attorney described because

> [o]nly if . . . trust accounts had a taxable event such as earning interest, dividends or capital gains or losses would that income be reported on the tax return. IRS Reg. § 1.671-4. Merely owning a bank or financial account does not cause it to be listed on a tax form.

In other words, that no returns were filed or taxable events disclosed on L.A.'s return did not mean that no additional assets were held in the trust. DMAHS questioned G.A. and L.A.'s stated reason for setting up the trust—to avoid probate—and found it "tenuous." Since the trust could accommodate additional assets, and the trust instructions "state[d] that in order to be effective 'you must transfer all your assets into the Trust[,]'" DMAHS held the information G.A. and L.A. provided was insufficient for approval of the application. Contrary to their testimony, DMAHS stated that neither G.A. nor counsel explained whether the trust form's directive to transfer all assets into the trust "was heeded[,]" and those types of assets "would not be found under normal asset searches or reported on income tax returns unless there was a taxable event[.]"

5

The substantial evidence rule, applicable to administrative appeals, is well established. We affirm an agency's decision unless arbitrary, capricious, unreasonable, unsupported by substantial credible evidence in the record as a whole, offensive to the federal or state constitutions, or inconsistent with the agency's legislative mandate. See Barrick v. State, Dep't of Treasury, Div. of Prop. Mgmt. & Constr., 218 N.J. 247, 259-60 (2014); Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9-10 (2009); Hemsey v. Bd. of Trs., PFRS, 198 N.J. 215, 223-24 (2009). Nonetheless, we do not merely rubberstamp the agency record and findings, but instead give them "careful and principled consideration[.]" Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 191 (App. Div. 2010) (citation omitted). Appellate review necessarily results in the reversal of decisions not supported by the record, or which include findings that are contrary to the record. See In re Williams, 443 N.J. Super. 532, 541 (App. Div. 2016); Seigel v. N.J. Dep't of Envtl. Prot., 395 N.J. Super. 604, 613 (App. Div. 2007).

The skepticism with which L.A.'s submission was viewed by CWA and the ALJ no doubt stems from the family's initial failure to disclose the existence of the trust and supply a copy of the trust document. The attorney testified at the hearing, however, that he used the lengthy form merely as a convenience and

not because the nature of the assets owned by G.A. and L.A. required it. G.A., found to be credible, said only the home was placed in the trust, and denied anything else was ever transferred into the trust.

DMAHS treated L.A.'s application with even greater skepticism, and speculated additional assets existed in G.A. and L.A.'s name in the trust during the lookback period. That the trust paperwork could have accommodated additional assets or transactions is not equivalent to a factual finding that it did so.

Thus neither the initial nor final agency decisions were supported by the record. G.A. said no assets were in the trust other than the home. The attorney knew of none. L.A. was required to produce information that simply did not exist, and denied benefits for that reason.

The final agency decision not only failed to address important, unrefuted evidence, it implied that G.A. and L.A.'s individual tax returns would not necessarily have reflected other assets that might have been placed in the trust because only if such assets generated income or loss did it need to be reported. But nothing in the record suggests such assets existed. Hence we find that L.A. supplied all the necessary information for review of her application, and that her benefits should not have been denied because of the omission.

 A-3368-17T3

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3368-17T3